### McGILL MFG. CO. v. LEVITON MFG. CO.
### No. 4918.

District Court, E. D. New York.

May 6, 1930.

George L. Wheelock, of New York City (Max W. Zabel, of Chicago, Ill., of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (George F. Scull, of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is a motion for a preliminary injunction. The action involves an alleged patent infringement and alleged unfair competition. The only question raised by this motion relates to the alleged unfair competition, and not to the alleged patent infringement.

Plaintiff has been manufacturing a fixture switch device, Plaintiff's Exhibit A, for a period of about eight years. For the last four years plaintiff has also been manufacturing and selling a link, as shown in Plaintiff's Exhibit B, which is frequently used in connection with the device, Plaintiff's Exhibit A.

The defendant has been manufacturing two devices, plaintiff's Exhibits C and D, for approximately three months in form, substance, and appearance the same as plaintiff's Exhibits A and B. While a minute examination of the exhibits does show some minor differences, one's first and last impressions of the exhibits are that they are for all practical purposes and appearances one and the same. In dealing with unfair competition cases, first impressions as to appearance should be given weight. The impression received by the court when these exhibits were first shown was that the devices were practically one and the same, and this impression has been confirmed by a more careful study and examination thereof.

Plaintiff's Exhibits A and B have met with great commercial success. Plaintiff has for about eight years manufactured and sold fixture switches like Exhibit A, all having the same design, shape, and appearance, except for somewhat dissimilar, ornamental, rib effects. Originally the casings for said fixture switches were made with two concentric strengthening ribs, in place of the three parallel strengthening ribs which are now used in the device manufactured by plaintiff.

Since about August, 1926, plaintiff has continuously manufactured and sold on the open market switches like Plaintiff's Exhibit A in the identical form of Exhibit A and

having three parallel strengthening ribs. The sales have been very large, plaintiff having sold millions of switches such as Exhibit A. Since plaintiff began the manufacture of these devices with the parallel strengthening ribs, it has made and sold upwards of four million of such devices. The shape of the brass cap and shell and the appearance of the insulating barriers guarding the openings through said shell and cap have been consistently the same in the two forms mentioned, namely, the form with the concentric strengthening ribs and the form with the parallel strengthening ribs.

Due to the distinctive shape and appearance of plaintiff's fixtures, they have acquired a secondary meaning so that the purchasers of similar devices of this nature understood and believed them to be the manufactured articles of plaintiff. Plaintiff's devices have been stamped with plaintiff's trade-mark "Levolier" in a conspicuous place on the back thereof, so that such distinctive name and trade-mark constituted the most prominent lettering appearing upon the devices.

On or about April 1926, the plaintiff, in order to adapt Plaintiff's Exhibit A for inclusion in a supporting element such as a chain, added an attachment link as shown in Exhibit B. The design selected by the plaintiff for such attachment link was not due to any function performing requirements, as there were many forms of attachment links that could be readily adapted to fulfill the functions of said attachment link, without the same being in the distinctive form selected by the plaintiff. This distinctive attachment link has also acquired a secondary meaning so that purchasers when seeing similar attachment links of this general form and shape believe that they were manufactured by the plaintiff.

There can be no doubt that confusion exists between plaintiff's and defendant's devices, and that purchasers are more than likely to be deceived in buying defendant's devices believing them to be plaintiff's devices. There is no dispute between plaintiff and defendant as to the law that the plaintiff is entitled to recover in an action for unfair competition when the defendant, a competitor, has unnecessarily and knowingly imitated his rival's devices to such an extent that purchasers are likely to be deceived by the resemblance of the devices, and where the general appearance of the devices are practically the same, unless the points of resemblance are the necessary result of functional requirements. Rushmore v. Manhattan Screw &

Stamping Works (C. C. A.) 163 F. 939, 19 L. R. A. (N. S.) 269; Lovell-McConnell Mfg. Co. v. American Ever-Ready Co. (C. C. A.) 195 F. 931; Rushmore v. Badger Brass Mfg. Co. (C. C. A.) 198 F. 379.

Defendant claims, however, that while there are many similarities existing between the devices, they are necessary because each of these similarities has a functional purpose.

It is true that the visible protruding insulation serves a functional purpose, because it prevents contact between the emanating wires and the shell. An examination of the devices shows that such functional requirement does not necessitate placing these openings in any certain specified place.

It is the law that functional elements may be copied in so far as it is necessary to reproduce their essential functional characteristics but not their form. The difficulty lies with the application of the law to the devices in question. The affidavits and exhibits are convincing that devices performing the function can be manufactured without making them in the identical form as the devices which plaintiff manufactures. The alleged strengthening ribs seem to be more ornamental than useful. When Plaintiff's Exhibit C, which is defendant's device, is pressed inwardly against the shell at the point opposite the chain extension, the cap will be found to be entirely loose and comes off without any effort, and as a result it would appear that the strengthening ribs on the cap serve no very great useful purpose.

If defendant believed that strengthening ribs were necessary, there were other forms of ribs which could have been designed. It was not necessary to copy the three ribs which plaintiff used.

The links used by defendant are exact copies of plaintiff's device. It cannot be seriously argued that links having distinctive appearances cannot function as well.

I am convinced that purchasers buying defendant's device would be deceived into believing them to be plaintiff's. Pending the trial of this action the defendant will be enjoined from making and selling any fixture switches and/or link attachments therefor which shall not be so differentiated and distinguished in outward form and/or appearance from plaintiff's corresponding devices, that purchasers and/or prospective purchasers thereof will not be likely to be deceived by the similarity of form and/or appearance into purchasing such said devices

marketed by defendant as those of the plaintiff.

The order shall provide that the openings shall not be placed in the very same position as in plaintiff's device; that the three ribs shall not be used on the cap in parallel formation; if ribs are used, they shall be placed in positions so as not to resemble ribs used in plaintiff's cap; links shall not be used in the identical form as that used by the plaintiff.

There are certain claimed functional elements which must be left to the trial of the action. This action can be readily tried due to the condition of the equity calendar.

It being obvious that defendant's devices sold by appearance rather than by the names of the manufacturer, defendant's carton should be changed, and it may contain a picture of the device which complies with this injunction.

The condition upon which this injunction is granted is that if this action should not be reached for trial within a short time, and if the defendant consents, the issues in this action concerning unfair competition shall be referred to a special master to hear and report, and if the plaintiff refuses to consent to said reference an application may be made by the defendant to vacate the injunction.

Upon the settlement of the order the court will determine the amount of bond to be given by the plaintiff.

Motion for injunction granted. Settle order on notice.