## GUM, Inc., v. GUMAKERS OF AMERICA, Inc.

No. 8067.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 8, 1942.

Decided June 30, 1943.

Rehearing Denied Sept. 20, 1943.

See, also, 1 F.R.D. 586.

Harry Shapiro, of Philadelphia, Pa. (George A. Smith, of Philadelphia, Pa., on the brief), for appellant.

Matthew S. Biron, of Philadelphia, Pa. (Harry Price, of New York City, on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Gum, Inc., a Pennsylvania corporation, brought an action for unfair competition against the defendant, Gumakers of America, Inc., a Delaware corporation, in the District Court for the Eastern District of Pennsylvania. The case was tried to the court without a jury. From the judgment dismissing the complaint the plaintiff has appealed.

Bubble chewing gum is marketed by both the plaintiff and the defendant in the form of a roll or cylinder. The cylinder is wrapped in colored waxed paper with twisted extending ends. The plaintiff's cylinder of gum is approximately 3 inches long, about ½ inch in diameter and its package, as extended by the twisted ends, is 5¼ inches long. The defendant's cylinder of gum is ¼ inch longer than the plaintiff's, slightly smaller in diameter and its package is about ½ inch longer. Upon the plaintiff's product is printed in large block letters the trade name Blony and in small inconspicuous type the plaintiff's firm name Gum, Inc.; upon the defendant's product in correspondingly similar type the trade name Bubly and the defendant's firm name Gumakers of America, Inc., appear.

The plaintiff claims that the unfair competition arises by reason of the deceptive similarity between Bubly and Blony intentionally achieved by the defendant by means of combining shape, size, weight, wrapper color scheme, wrapped ends, company name and trade name. The point made by the plaintiff is that though each feature might have been copied legitimately the collocation of features results in unfair competition.

The district court found as a fact that there is a difference between the two products and that there is not such an identity and priority of use in the various features of the two products as would constitute unfair competition. The defendant takes the position that this court is bound to accept the trial judge's findings of fact since they are supported by the evidence.[1]

The plaintiff does not question the binding effect of the findings of fact. As we understand it, the plaintiff's contention is that, although the trial judge found that the two products were not identical and consequently dismissed the complaint, he erred in doing so because the proper test in unfair competition cases is not whether the competing product and the original product are identical but whether they are deceptively similar.[2] The plaintiff argues that if the trial judge had looked at the exhibits of Blony and Bubly from the viewpoint of a purchaser having neither opportunity nor incentive for a side-by-side comparison of the two products rather than with the keen eye of one trained in analysis and detection and with the purpose of discovering differences he would have been compelled to conclude that the two products were deceptively similar.

Though the plaintiff may be right in its premises it does not follow that the complaint was improperly dismissed, for it remains to be determined whether the plaintiff has produced sufficient evidence of unfair competition to justify the court in issuing the injunction sought to restrain it.

Aside from the prohibition against infringing a patent, copyright or trade mark and except for the requirement, hereinafter discussed, that he must identify his product as his own, any one has the right to manufacture and sell a product similar or even identical in appearance to the original product with which it competes unless the original product has become associated in the public mind with its producer. In Flagg Mfg. Co. v. Holway, 1901, 178 Mass. 83, 59 N.E. 667, the defendant manufactured zithers which so closely resembled those made by the plaintiff in outline, arrangements of strings and other features that it was obviously an imitation. The court held that the defendant had a right to imitate the appearance of the plaintiff's zither. Chief Justice Holmes there said (178 Mass. at pages 90, 91, 59 N.E. at page 667):

"Both zithers are adapted for the use of patented sheets of music, but the zithers are not patented. Under such circumstances the defendant has the same right

---

[1] Civil Procedure Rule 52(a), 28 U.S.C.A. following section 723c; Viles v. Prudential Ins. Co. of America, 10 Cir., 1939, 107 F.2d 696; McCullogh v. Penn Mut. Life Ins. Co. of Phila., 9 Cir., 1939, 62 F.2d. 831.

[2] Citing R. H. Winterton Gum Co. v. Autosales Gum & C. Co., 6 Cir., 1914, 211 F. 612; Howard Dustless Duster Co. v. Carleton, D.C.Conn., 1915, 219 F. 913; J. N. Collins v. F. M. Paist Co., D.C.Pa., 1926, 14 F.2d 614.

that the plaintiff has to manufacture instruments in the present form, to imitate the arrangement of the plaintiff's strings or the shape of the body. In the absence of a patent the freedom of manufacture cannot be cut down under the name of preventing unfair competition. * * * All that can be asked is that precautions shall be taken, so far as are consistent with the defendant's fundamental right to make and sell what [he] chooses, to prevent the deception which no doubt [he] desires to practice.

"It is true that a defendant's freedom of action with regard to some subsidiary matter of ornament or label may be restrained, although a right of the same nature with its freedom to determine the shape of the articles which it sells. But the label or ornament is a relatively small and incidental affair, which would not exist at all, or at least would not exist in that shape but for the intent to deceive; whereas the instrument sold is made as it is, partly at least, because of a supposed or established desire of the public for instruments in that form. The defendant has the right to get the benefit of that desire even if created by the plaintiff. The only thing [he] has not the right to steal is the good will attaching to the plaintiff's personality, the benefit of the public's desire to have goods made by the plaintiff."

In commenting upon this case Nims, a pioneer text writer on the subject of unfair competition, has this to say: "No one can obtain the sole right to a name or article which has become attached to a process; but one may acquire valuable and distinct rights to a name or form of goods which has become associated with his personality. The first maker of zithers in this particularly desirable style may have created a desire on the part of the public for one of two things, either for zithers made by him, above all other zither makers, or for zithers made in a particular form regardless of who makes them. The law of unfair competition is interested in the first of these conditions—the one attaching to the personality. But the fact that the demand for zithers has been created by the plaintiff will not put the case within the unfair competition rules, where the demand is for the article, not the personali-

ty." Nims on Unfair Business Competition, p. 290.

The necessity in unfair competition cases for proof that the public desire is for a product made by the plaintiff in distinction to a desire for a product for which the plaintiff has created the demand was succinctly expressed by Judge Learned Hand in Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299. He said (247 F. at page 300): "The cases of so-called 'nonfunctional' unfair competition, starting with the 'coffee mill case,' Enterprise Mfg. Co. v. Landers, Frary & Clark, 131 F. 240, 65 C.C.A. 587, are only instances of the doctrine of 'secondary' meaning. All of them presuppose that the appearance of the article, like its descriptive title in true cases of 'secondary' meaning, has become associated in the public mind with the first comer as manufacturer or source, and, if a second comer imitates the article exactly, that the public will believe his goods have come from the first, and will buy, in part, at least, because of that deception. Therefore it is apparent that it is an absolute condition to any relief whatever that the plaintiff in such cases show that the appearance of his wares has in fact come to mean that some particular person—the plaintiff may not be individually known—makes them, and that the public cares who does make them, and not merely for their appearance and structure. It will not be enough only to show how pleasing they are, because all the features of beauty or utility which commend them to the public are by hypothesis already in the public domain. The defendant has as much right to copy the 'nonfunctional' features of the article as any others, so long as they have not become associated with the plaintiff as manufacturer or source. The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source. Unless the plaintiff can answer this question he can take no step forward; no degree of imitation of details is actionable in its absence." [3]

Upon application of these principles to the present case it would follow that the plaintiff would have the right to prohibit all others from copying the appearance of

---

3 See also Sinko v. Snow-Craggs Corporation, 7 Cir., 1939, 105 F.2d 450, and American Fork & Hoe Co. v. Stampit Corporation, 6 Cir., 1942, 125 F.2d 472 in which relief was denied because of the failure of proof that the appearance of the product had become associated in the public mind with the plaintiff.

Blony if bubble gum having that appearance had become associated in the public mind with the plaintiff. If such is not the fact anyone, including the defendant, may manufacture and sell bubble gum having the appearance of Blony, provided the imitating product is in some way identified as that of the defendant rather than of the plaintiff.

The plaintiff's evidence is that it packaged bubble gum in the cylindrical shape and having substantially the present appearance of Blony at least ten years before the defendant produced Bubly, that it expended large sums in advertising all its chewing gums including Blony, that officers and employees of the defendant had at one time been associated with the plaintiff and after severing their association proceeded to market a bubble gum which in the course of time developed a remarkable resemblance to Blony and was named Bubly, that thereafter the defendant's sales of its bubble gum increased considerably in volume, that retailers of bubble gum frequently sold one for the other, and that members of the public were at times confused as to the origin of one or the other gum.

■ From this evidence it would be possible to conclude that the plaintiff by its pioneer work in the field created the desire in the public for bubble gum having the appearance of Blony, that the defendant copied that appearance and profited by the public demand which the plaintiff had aroused. This evidence would not, however, justify a finding that the public associates with the plaintiff bubble gum having the appearance of Blony in the form in which it is marketed or that the public demand is for the plaintiff's product as such.

■ As has already been said, even though there may be an absolute right on the part of the defendant to imitate the plaintiff's product there is no right on the part of the defendant to pass off its product for that of the plaintiff. In Kellogg Co. v. Nat. Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, the plaintiff contended that it had the exclusive right to the name "Shredded Wheat" because these words had acquired the secondary meaning of shredded wheat made at Niagara Falls. The court held that to establish

such a right the plaintiff must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. All that the plaintiff had the right to insist upon was that the defendant use reasonable care to inform the public of the source of its product. Justice Brandeis said (305 U.S. at page 120, 59 S.Ct. at page 114, 83 L.Ed. 73): "Where an article may be manufactured by all, a particular manufacturer can no more assert exclusive rights in a form in which the public has become accustomed to see the article and which, in the minds of the public, is primarily associated with the article rather than a particular producer, than it can in the case of a name with similar connections in the public mind. Kellogg Company was free to use the pillow-shaped form, subject only to the obligation to identify its product lest it be mistaken for that of the plaintiff."

■ Upon the plaintiff's wrapper of Blony is printed "Made by Gum, Incorporated, Philadelphia, Pa., U. S. A." Upon each wrapper of Bubly the defendant has caused to be printed "Gumakers of America, Inc., Clifton Heights, Pa." Both use small type which though rather inconspicuous is quite legible. In the light of the plaintiff's indication by its own practice that the manner in which its name is printed upon the Blony wrapper is sufficient to inform the public of the origin of its product, we cannot hold that the substantially similar way in which the defendant prints its name upon the wrappers of its product is insufficient for the same purpose.

■ One more matter remains for discussion. Since federal jurisdiction is based upon diversity of citizenship, the question as to whether the conduct of the defendant is tortious is a matter of state law.[4] Under the circumstances of this case[5] the appropriate local law is that of Pennsylvania. Consequently, though both parties have relied almost entirely upon federal precedents, we have made an examination of those Pennsylvania decisions which might throw some light upon the matter. We find that the law of Pennsylvania is consistent with the general law of unfair competition as reflected in the federal cases although

---

[4] Erie R. Co. v. Tompkins, 1938, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[5] Pecheur Co. v. National Candy Co., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L. Ed. 1103.

the precise point here involved appears not to have been specifically decided in that state. It is our opinion that if a Pennsylvania court were called upon to determine the law of that state on the point now under consideration it would accord with the rule enunciated by the Supreme Court of the United States in the Kellogg Company case. It follows that the complaint was properly dismissed.

The judgment of the district court is affirmed.