## SMITH, KLINE & FRENCH LABORATO-
### RIES v. WALDMAN.

#### No. 4739.

District Court, E. D. Pennsylvania.

July 18, 1946.

Busser & Harding and George J. Harding, all of Philadelphia, Pa., for plaintiff.

Arthur W. A. Cowan, of Philadelphia, Pa., for defendant.

WELCH, District Judge.

This is a motion by Smith, Kline & French Laboratories to restrain the defendant, Harry A. Waldman, trading as Rona Pharmacal Company, from engaging in acts of alleged unfair competition.

Prior to 1939 plaintiff commenced to market a tablet containing a 10 milligram dosage of amphetamine sulfate under its registered trade-mark "Benzedrine". In 1939 it marketed a pharmaceutical tablet containing a 5 milligram dosage of amphetamine sulfate under its registered trade-mark "Dexedrine". Finally, since 1940 it has marketed continuously another tablet containing 5 milligram of amphetamine sulfate under its registered trade-mark "Benzedrine".

The plaintiff sells these tablets only at wholesale to druggists who, in turn, sell them to the public only upon physician's prescription. The tablets reach the druggists in original bottles which are clearly labelled with the plaintiff's name and trade-mark. But sales by the druggists to the ultimate consumers are of the product in its naked form out of the bottle or in the druggists' own package. As the plaintiff does not deal with the ultimate consumer, it seeks only the patronage and good will of physicians and pharmacists with whom it deals directly. Among other means used to that end it spent and is still spending large sums of money for advertising in trade journals patronized by the medical and drug professions.

Comparatively recently, the defendant, Waldman, began the manufacturing of amphetamine sulfate tablets and dextroamphetamine sulfate tablets in 10 and 5 milligram sizes. Similarly, the defendant's tablets are sold only at wholesale to druggists who, in turn, sell them to the public only upon physician's prescription. And likewise, these tablets are sold to druggists in bottles supplied by the defendant and plainly marked with the defendant's registered trade-marks "Ronadex" and "Ronazine", and defendant's trade name "Rona Pharmacal Company". Also, the druggists in filling prescriptions sell the products of the defendant in naked form out of the bottle or in his own packages.

The complaint is that the tablets marketed by the defendant are similar to the plaintiff's in that they are round, white tablets, cross-scored, the top edge is bevelled and the bottom is concave, and that this situation constitutes unfair competition against which the plaintiff prays for injunctive relief.

That the tablets manufactured by the adverse parties are exactly alike (the tablets of the defendant are Chinese copies of plaintiff's tablets) can hardly be disputed. But standing alone, this fact is not conclusive of unfair competition as the functional and non-functional aspect of the imitated features must be taken into consideration. With regard to the imitation of non-functional features the law is unsettled. One line of authorities holds that the imitation of non-functional features is illegal if the similarity is likely to deceive purchasers (Rushmore v. Manhattan Screw & Stamping Works, 2 Cir., 163 F. 939, 19 L.R.A.,N.S., 269; McGill Mfg. Co. v. Leviton Mfg. Co., D.C., 43 F. 2d 607) and the other states that one may freely copy the non-functional features of the article if they have not become associated with the original manufacturer or source and the article is bought because of its utility and neat appearance. The latter which appears to be the weight of authority springs from the theory that the "cases of so-called 'nonfunctional' unfair competition * * * are only instances of the doctrine of 'secondary' meaning", Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, 300; Gum, Inc., v. Gumakers, Inc., of America, 3 Cir., 136 F.2d 957. However, it is not the duty of this Court to resolve this conflict of authorities as the copied features fall with-

in the scope of the definition of functional features as laid down in Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 617, 68 L.Ed. 1161. The definition of a functional or an essential feature is one which "serves a substantial and desirable use, which prevents it from being a mere matter of dress". Warner & Co. v. Eli Lilly & Co., supra. The Court is satisfied that the features here involved meet that test. The tablets contain a potent chemical and are frequently prescribed in doses of one-fourth or one-half tablet. Thus, to facilitate breakage in accordance with the doses the tablets are made of a convenient size by dilution with a large amount of an inert substance (either pure milk sugar or terra alba as the case may be) and the tops are cross-scored to a depth sufficient to permit an accurate break. The breakage is further facilitated by making the tablet thinner at the center than at the edge by means of a concave bottom. The outer edge is bevelled to prevent crumbling in the bottles. Amphetamine sulfate itself is white. In Warner & Co. v. Eli Lilly & Co., supra, the respondent who was engaged in the sale of a liquid preparation of quinine containing chocolate attempted to enjoin the manufacture and sale by the petitioner of a similar liquid preparation of quinine likewise containing chocolate. The facts of the latter case are the same as the instant case in that the products involved were manufactured and sold at wholesale to druggists in the manufacturer's own bottle and sold in turn by the druggists to the ultimate consumer in naked form and only upon physician's prescription. In discussing the copying or imitating phase of that case Mr. Justice Sutherland said: "Respondent has no exclusive right to the use of its formula. Chocolate is used as an ingredient, not alone for the purpose of imparting a distinctive color, but for the purpose of also making the preparation peculiarly agreeable to the palate, to say nothing of its effect as a suspending medium. While it is not a medicinal element in the preparation, it serves a substantial and desirable use, which prevents it from being a mere matter of dress. It does not merely serve the incidental use of identifying the respondent's preparation * * * and it is doubtful whether it should be called a nonessential. The petitioner or anyone else is at liberty under the law to manufacture and market an exactly similar preparation containing chocolate and to notify the public that it is being done".

■ As the features which the defendant copied from the plaintiff were functional and therefore part of the public domain he was free to imitate them in every particular. If purely functional elements are copied a charge of unfair competition, because of the resemblance, cannot be supported.

■ The right to imitate or copy the functional features of goods does not of course import the privilege of stealing the trade of the originator, through deception or confusion. That is, the defendant could not through deception and confusion palm off its tablets as those of the plaintiff. J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949. An examination of the facts, exclusive of the imitated functional features, therefore is necessary to determine whether or not the defendant is guilty of palming off his tablets as those of the plaintiff. The adverse parties sold their respective tablets at wholesale to pharmacists and although it is undisputed that the tablets of the defendant in appearance are Chinese copies of the plaintiff's tablets it is equally undisputed that the defendant's bottles, labels, names and trade-marks in no wise resemble the bottles, labels, names and trademarks of the plaintiff. From these facts the conclusion is inescapable that the druggists who are the direct purchasers are aware of the source of the tablets they buy and that as to them there can be no deception or confusion. The plaintiff argues, however, that the defendant by manufacturing tablets identical with those of plaintiff is affording pharmacists in cases where Smith, Kline & French Laboratories tablets are prescribed by name to substitute in their stead the tablets of the defendant. In support of this contention the plaintiff cites Coca Cola Co. v. Gay-Ola Co,. 6 Cir., 200 F. 720, wherein it is stated that putting the means of consummating

a fraud in the hands of another party still makes one accountable and guilty of unfair competition. In respect to this argument it need only be mentioned that in that case an intent to defraud on the part of the imitator was shown. In the instant case there is no suggestion of fraud, there is only the bald fact of an imitation and Coca Cola Co. v. Gay-Ola Co., supra, therefore is inapplicable. Where there is an imitation only and there are no additional facts to substantiate either an intent to defraud the ultimate purchaser, or a conspiracy with the direct purchaser to defraud the ultimate purchaser, a charge of unfair competition cannot be sustained. Despite the fact that there is no unfair competition in this respect the plaintiff still has the right to proceed against individual druggists, as in the case of Winthrop Chemical Co., Inc., v. Weinberg, 3 Cir., 60 F.2d 361, if it feels that the practice of substitution by druggists is widespread.

■ The plaintiff claims the existence of deception and confusion and the passing off with regard to the public (the ultimate consumers) because the public associates the form or appearance of tablets with a particular manufacturer, namely, Smith, Kline & French Laboratories, the plaintiff. This claim, we think, is untenable. As has been stated, amphetamine sulfate is a. potent drug and is sold only upon physician's prescription and reaches the ultimate consumer in naked form. Generally, the ultimate consumer knows nothing of the name or ingredients of the drug and he knows less of the origin or manufacture of the drug. Therefore, in making the purchase or in having the prescription filled he relies not on the origin of the tablet but on the skill and good faith of the physician and druggist. Also, the doctrine of "secondary meaning" does not avail the plaintiff, for that doctrine has no application where functional features are imitated. Gum v. Gumakers of America, supra.

■ The last claim of the plaintiff is that the defendant is receiving the benefit of the good will built up at great costs by the plaintiff. In this connection, the authorities agree that sharing in the good will of another is not unfair unless the passing off of one's goods as those of another is shown. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 115, 83 L.Ed. 73; Warner & Co. v. Eli Lilly & Co., supra. In the former the Court expressed its conclusions in the following manner: "Kellogg Company is undoubtedly sharing in the good will of the article known as "Shredded Wheat"; and thus is sharing in a market which was created by the skill and judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the good will of an article unprotected by patent or trade-mark is the exercise of a right possessed by all— and in the free exercise of which the consuming public is deeply interested."

■ It appears from the affidavits that defendant is able to market its amphetamine sulfate tablets at approximately one-tenth the price that is charged by the plaintiff. This difference in price is undoubtedly resulting in a decrease of plaintiff's sales, and this is perhaps the plaintiff's main grievance. But that grievance need not concern us as Courts cannot protect one from lawful competition. The public is as much entitled to the benefit of fair competition in prices as in any other consumer's element, and it is perhaps much more vitally and directly interested in it. J. C. Penney Co. v. H. D. Lee Mercantile Co., supra. The plaintiff urges upon us the fact that the public is not benefiting as a result of the difference in price between the plaintiff's and defendant's tablets because the druggists are appropriating the profit to themselves. However, we are convinced of the honesty and integrity of the overwhelming majority of druggists and the consequent saving to the consuming public.

The Finding of Fact and Conclusions of Law found or contained in the foregoing opinion are adopted as the special findings and conclusions of this Court and all the requests for Findings of Fact and Con-

clusions of Law submitted by the parties in interest which are not in conformity with this opinion are denied.

Motion for a temporary injunction is denied and a decree may be entered in accordance with the views above expressed.