The **ARTUS CORPORATION**, Plaintiff,

v.

**NORDIC CO., INC.**, Defendant.

**Civ. A. No. 77–1437.**

United States District Court,
W. D. Pennsylvania.

April 30, 1981.

Raymond G. Hasley, Pittsburgh, Pa., for plaintiff or petitioner.

James P. Ross, Pittsburgh, Pa., for defendant or respondent.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

On October 15, 1940, plaintiff, The Artus Corporation, ("Artus"), obtained an exclusive license under a United States patent for a novel shim for spacing milling machinery parts. Included in the patent was the claim that the shim material would be colored, but no specific colors were claimed. Within one month of securing the patent, Artus adopted the following colors to indicate various thicknesses of the shims: silver, amber, purple, red, green, tan, blue, transparent matte, brown, black, pink, yellow, white and coral. Artus has continuously and consistently utilized these plain colors in the advertising, manufacturing and selling of its shims.

In October, 1974, defendant, Nordic Company, ("Nordic"), began to manufacture and sell plain, unmarked color-coded shims. These shims differed from those of Artus in color selection. Nordic's marketing attempt was initially unsuccessful and it abandoned its choice of colors and adopted Artus' plain, unmarked color-coded system with identical thicknesses. Repeated requests by Artus to Nordic to discontinue use of the unmarked color scheme have been ignored.

Artus instituted this action on December 23, 1977, alleging infringement of proprietary rights due to unfair competition in the manufacture and sale of plain, unmarked color-coded shims, gasket shim stock and spacers. On January 24, 1978, Nordic answered and denied infringement and simultaneously set forth affirmative defenses and a counterclaim. In defense, Nordic contends that plaintiff's plain color-coded system for shims is available for privileged imitation and thus not entitled to protection, and also that the action is barred by unclean hands and laches. In its counterclaim, defendant alleges that Artus has unlawfully attempted to monopolize the trade in the industry.

Following discovery, Artus moved for summary judgment. The court denied the motion on January 31, 1980, due to the existence of a genuine issue of a material fact. Thereafter, Artus amended its complaint and additionally charged Nordic with acts of unfair competition and deceptive trade practice under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).

Specifically, Artus alleges that Nordic has been and continues to engage in unfair trade practices and competition by distributing and selling plain, unmarked color-coded shims, identical in appearance to those manufactured, advertised and sold by Artus, with the intention of trading upon the goodwill established by Artus in the marketplace. Artus further contends that its plain, unmarked color-coded system is nonfunctional, has acquired secondary meaning, and is thereby deserving of protection as a matter of law.

Nordic rejoins that it has a legal right to identical use of plaintiff's plain color-coded system since the colors are functional and

Nordic has adequately labeled its shims to designate their origin and to eliminate any possible likelihood of confusion. On September 17, 1980, Nordic moved for summary judgment.

Presently before the court is Nordic's motion for summary judgment and Artus' renewed motion for judgment. For the reasons hereinafter set forth, defendant's motion will be denied and plaintiff's renewed motion for summary judgment will be granted in part.

## II. *Discussion*

This case presents the question of whether Nordic has been and continues to engage in acts of unfair competition against Artus by manufacturing and selling plain, unmarked color-coded shims that are virtually identical in colors and sizes to those manufactured and sold by Artus.[1] Before reaching plaintiff's claims of unfair competition and false advertising under the Lanham Act and state law, we will briefly review the well-established federal jurisprudence pertaining to the right to copy goods or products of another.

■ Federal law permits Nordic to manufacture and sell plain, unmarked color-coded shims which are identical in every detail to those manufactured and sold by Artus. Artus' plain, unmarked color-coded system is neither patented nor copyrighted and thus entirely in the public domain, and Nordic has the right, if it chooses, to copy. *Sears, Roebuck & Co. v. Stiffel*, 376 U.S. 225, 231–32, 84 S.Ct. 784, 788–89, 11 L.Ed.2d 661 (1964). This principle obtains even if the system became associated with Artus in the public's mind prior to Nordic's entry in the field in 1974. As the Supreme Court stated in *Compco Corp. v. Day-Brite Lighting, Inc.*:

> That an article copied from an unpatented article could be made in some other way, that the design is non-functional and not essential to the use of either article, that the configuration of the article copied may have a secondary meaning

which identifies the maker to the trade, or that there may be confusion among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, regardless of the copier's motives, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying or selling.

376 U.S. 234, 238, 84 S.Ct. 779, 782, 11 L.Ed.2d 669 (1964).

■ While federal (patent) law prevents a state from prohibiting the copying and selling of unpatented articles, it does not preclude a state, either statutorily or judicially, from requiring that those who make and sell copies must take precautions to adequately identify their products. *SK&F Co. v. Premo Pharmaceutical Lab.*, 625 F.2d 1055, 1964 (3d Cir. 1980); *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631, 640 (2d Cir. 1979); *Gum, Inc. v. Gumakers of America, Inc.*, 136 F.2d 957, 959 (3d Cir. 1943). We now move to the crux of the dispute—unfair competition under Pennsylvania law.

### (A)

■ Pennsylvania jurisprudence with respect to unfair competition and the Lanham Act, 15 U.S.C. § 1125(a), are identical except for the federal requirement of interstate commerce, an element not here in dispute. The test for unfair competition is the existence of a secondary meaning and the likelihood of confusion as to the source of the product. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 605 (3d Cir. 1978). Unfair competition goes to the question of marketing, not to the question of manufacturing. One may be within his legal rights in producing an item and yet act extralegally if the item is marketed in such a way that confusion is generated as to the source of the goods. *B. H. Bunn Co. v. AAA*

---

1. There is no issue of material fact regarding the degree of similarity between the shims of both parties.

*Replacement Part Co.*, 451 F.2d 1254, 1263 (5th Cir. 1971); McCarthy, Trademarks and Unfair Competition, Section 8:1, at 230–31 (1973).

Artus has the burden of proving that its plain, unmarked color scheme is entitled to protection against imitation, and the Nordic's plain, unmarked color scheme is so similar that confusion is likely. *Stroehmann Bros. v. Manheck Baking Co.*, 331 Pa. 96, 200 A. 97 (1938). Artus is not required to prove actual palming-off; a showing of likelihood of confusion is sufficient. *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958).

■ To establish a claim for unfair competition under Pennsylvania law, two elements must be present: (1) the public's recognition that a plaintiff's mark or feature is identified with his product and distinguishable from those of others, i. e., a secondary meaning, and (2) activities that cause a likelihood of confusion among relevant purchasers. *L'Aiglon Apparel, Inc. v. Lana Labelle, Inc.*, 214 F.2d 649 (3d Cir. 1954). The first element can be shown primarily in two ways: (a) the mark is inherently distinctive, (i. e., trademark in the classic sense), or (b) even if not inherently distinctive, the feature has acquired a secondary meaning in the minds of customers. *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292, 317 (E.D.Pa.1976), *modified on other grounds*, 587 F.2d 602 (3d Cir. 1978); McCarthy, *supra*, Section 15:4, at 524.

Nordic contends, and Artus concedes, that Artus' original decision to color its various shims was functional. The coloring was, and still is employed to denote thickness. It decreases the probability of "thickness" error and saves the user set-up time. Since coloring affects handling, it is in this context functional.

Section 742 of the Restatement of Torts defines functionality as follows:

A feature of the goods is functional, under the rule stated in 741, if it affects their purpose, action or performance, or the facility or economy of processing, handling or using them; it is non-functional if it does not have any of such effects.

If the right to color was at issue, Artus concedes that Nordic would be entitled to employ colors to denote shim thickness. That concession is mandated by *Ives Laboratories, Inc. v. Darby Drug Co., Inc., supra*, 601 F.2d at 643. "Where the features are functional there is normally no right to protection or relief . . . . If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright . . . ." However, Artus objects to the use of a particular combination of unmarked colors, without adequate distinguishing characteristics or labeling, and not to the use of colors, per se. Artus' use of plain, unmarked colors serves to distinguish its product from that of other manufacturers and sellers, just as the use of Artus' colors with the application of dots and stars distinguish the products of other manufacturers from Artus.

Artus contends that the particular selection and arbitrary application of 14 varying unmarked colors is nonfunctional and, over the course of 25 years, it has developed a secondary meaning in the minds of its customers. We agree.

■ Color alone or indiscriminately applied to the overall configuration of a product may not function as a trademark. However, when it is applied to goods in some definite, arbitrary manner or design, it can so function if it is used in the manner of a trademark and it is recognized in the industry as identifying and distinguishing the source of the product in connection with which it is used. *In re AFA Corp.*, 196 U.S.P.Q. 772, 774–75 (T.T. & A.Bd. 1977). Moreover, when a feature of the item is arbitrary, the feature may become a trademark even though it serves a useful purpose. *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631 (2d Cir. 1977); *Truck Equipment Service Co. v. Fuehauf Corp.*, 536 F.2d 1210 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

■ As in *Ives*, we reject Nordic's argument that Artus' system should be denied protection because of functionality and the risk of monopoly. The use of a specific color scheme by Artus bears no relationship to the shim's ability to perform as a spacer in milling machinery. A shim can be any color. Any color can designate thickness. In fact, Nordic admits that other manufacturers of color-coded shims have distinguished their products from Artus and yet remain competitive.

Nordic claims that Artus conceded functionality when it labeled its color identification chart and related advertising materials with the slogan, "The Color Tells The Thickness." This slogan is not dispositive of the functionality issue, however, for an examination of the color charts and marketing literature of the parties and other competitors reveals that each has declared that the various colors indicate the thickness of the shim:

Artus—"The Color Tells The Thickness." (Defendant's Exhibit Nos. 2, 3)

Nordic—"Color Identifies The Shim's Thickness." (Defendant's Exhibit No. 5)

Alert—"Pick The Thickness You Want— By Color." (Plaintiff's Exhibit No. 3)

General Gasket—"Pick The Thickness You Want By Color." (Plaintiff's Exhibit No. 2)

A shim which is colored in accordance with plaintiff's scheme will facilitate selection for appropriate use only if one is accustomed to Artus' colors as denoting thickness, but if plaintiff's scheme is eliminated and other colors are substituted, nothing of substantial value is lost in the goods themselves. *SK&F Co. v. Premo Pharmaceutical Lab.*, 625 F.2d 1055, 1964 (3d Cir. 1980); Restatement of Torts, Section 742, Comment a (1938).

We therefore conclude, as a matter of law, that Artus' plain, unmarked colors are nonfunctional and entitled to protection if secondary meaning has attached.

(B)

■ The issue of secondary meaning is generally a factual one and often a matter of inference. *John Wright, Inc. v. Casper Corp., supra*, 419 F.Supp. 292, 317–318. Proof of secondary meaning is difficult since there are no precise guidelines and no single determining factor. Each case must be decided on its own facts with considerations given to such elements as: (a) length and exclusivity of use, (b) sales level, (c) extent of advertising and promotion, and (d) similarity of the markets or products in the likelihood of causing confusion. *American Footwear Corp. v. General Footwear Company*, 609 F.2d 655, 665 (2d Cir. 1979).

■ No particular length of time is required to establish secondary meaning so long as attachment occurs before the junior competitor enters the market. *Wright, supra* at 318, citing *Barton v. Rex-Oil Co.*, 2 F.2d 402, 405 (3d Cir. 1924). The word secondary refers only to second in time, for the additional association with source meaning often overtakes the original or first-in-time meaning of the symbol, mark, or device. *Levi-Strauss & Co. v. Blue Bill, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980).

In the instant case, several factors support plaintiff's claim of secondary meaning. First, viewing the above factors, Artus has continuously utilized the same, original, plain, unmarked color-coded system for its shims from 1940 to the present; it has a large customer following of approximately 2500 to 3000 customers and has sold more than 40,000,000 plain, unmarked color-coded plastic shims in the marketplace; it has and continues to advertise extensively both in the United States and abroad; and its advertisements essentially relate to the color system as a means of identification.

Secondly, Artus has been successful in preventing others from marketing and selling identical plain, unmarked colored shims on at least three occasions. Alert Manufacturing and Chicago Wilcox, both competitors of plaintiff, have agreed through consent judgments and settlement agreements to distinguish their products by placing stars and dots on their shims. A third

manufacturer, General Gasket, completely changed its color scheme and still remains competitive.

Lastly, purchasers of shims have periodically referred complaints to Artus concerning the quality of shims which they erroneously believed, based upon color observation only, to be plaintiff's product.

■ Of course, the fact that two competitors use similar or even identical marks for their respective products, and that buyers are likely to become confused, does not establish secondary meaning. *Miscellaneous, Inc. v. Klein's Fashions, Inc.*, 452 Pa. 62, 305 A.2d 22 (1973). However, if a buyer associates a mark with the plaintiff, such as plain, unmarked colored shims with Artus, secondary meaning is present and the law will afford protection. *Gum, Inc. v. Gumakers of America, Inc.*, 136 F.2d 957, 959 (3d Cir. 1943).

In the case *sub judice*, there is evidence that shim customers, as well as manufacturers, associate plain, unmarked colored shims with Artus. Artus and Nordic agree that plaintiff continues to be the exclusive source of plain, unmarked colored plastic shims. The deposition testimonies of Kaercher, Carlin and Mishne attest to recognition of specific plain, unmarked colored shims as emanating from Artus. Nordic admits that it intentionally adopted the Artus colors in plain, unmarked style to become successful in the marketplace. This intentional simulation by Nordic supports plaintiff's argument that Artus succeeded in creating consumer recognition and goodwill for its product which Nordic desired to appropriate. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir. 1979); *Socony-Vacuum Oil Co. v. Rosen*, 108 F.2d 632, 636 (6th Cir. 1940). We hold that Artus' 14 unmarked colors have acquired a secondary meaning in the relevant market.

### (C)

Even if we assume that plaintiff's color scheme is functional, a conclusion which we reject, Nordic's intentional imitation supports at least a presumption that the similarity will cause customer confusion. *Ha-rold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 758–59 (2d Cir. 1960). Section 729 of the Restatement of Torts, Comment f, at 594–95, provides:

> A latecomer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile. * * * But such an intent raises a presumption that customers will be deceived.

*See also, My-T Fine Corp. v. Samuels*, 69 F.2d 76, 77 (2d Cir. 1934).

■ The test for customer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but whether they create the same general overall impression. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341 (E.D.Pa.1972), aff'd, 480 F.2d 917 (3d Cir. 1973); *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 762. If the similarities in appearance are unduly confusing to the average customer, the defendant has trespassed upon the plaintiff's rights unless he has taken reasonable steps to indicate the source of the product to prevent deception. Confusion may consist of misleading customers or potential customers as to the identity, source or origination of the goods. If confusion exists, the senior entrant is entitled to protection. *DeCosta v. Columbia Broadcasting Systems, Inc.*, 520 F.2d 499, 513 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

Nordic argues that its plain, unmarked colored shims are clearly labeled to indicate the source. It asserts that the label on the clear plastic package prominently carries the word "Nordic," and its advertising literature likewise proclaims "Nordic" as the source. Therefore Nordic argues that a purchaser could not likely be confused. We disagree.

■ First, there is no evidence to indicate that the mere presence of the word "Nordic" on the package avoids the likelihood of confusion. A display of a manufacturer's name is not always dispositive of the issue. *T. & T. Mfg. Co. v. A. T. Cross Co.*

*DRI*, 449 F.Supp. 813, 819, *aff'd on other grounds*, 587 F.2d 533 (1st Cir. 1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377 (1978). A dissimilarity in names will often prove ineffective in preventing confusion caused by the general similarity in appearance of the product. *Id.*

Second, Nordic focuses upon the condition of the shims when sold and limits its argument to "point of sale" circumstances. However, defendant completely ignores the practice of the industry in procuring and using shim products. The parties' respective products are marketed in virtually the same manner. Both products are distributed on a nationwide basis and each solicit the same potential customers. The products serve identical functions. After an initial sale, usually by a sales representative, shims are generally ordered by mail by the customer's purchasing agent. Once received, the shims are stripped of their "point of sale" materials, including wrappers or packages, and stockpiled until they are needed. At this point, the shims have no identifying labels, and thus the customer has no way of ascertaining upon observation the source of product. That the user may be the person who is likely to become confused does not support defendant's "point of sale" contention since confusion among users, who are not generally the specific purchasing agents, may and often does lead to confusion. *Telechron, Inc. v. Telecon Corp.*, 97 F.Supp. 131 (D.C.Del. 1951), *aff'd*, 198 F.2d 903 (3d Cir. 1952). Without adequate labeling, Nordic's shims appear identical even though the parties agree that they differ in material properties.

Nordic argues that it is not obligated to protect the negligent and unattentive purchaser from confusion resulting from indifference, or make the market foolproof. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 119, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). We agree with the principle but defendant's reliance on *West Point Manufacturing Co. v. Detroit Stamping Co.*, 222 F.2d 581, 595–96 (6th Cir. 1955), and *Gum, Inc. v. Gumakers of America, Inc.*, *supra*, in support of its argument is misplaced.

In *West Point*, the court determined that a purchaser using ordinary care could easily discover the source of the product bought or used because the defendants' tradename was impressed directly on the toggle clamp; thus there could be no question as to source regardless of storage or use. *West Point, supra* at 595–596. In *Gum, Inc.* the court concluded that any ordinary buyer could not become reasonably confused because the wrappers, sufficiently distinguishable, would normally be removed immediately before use, i. e., chewing. *Id.* at 958–59.

In the instant case, Nordic has arranged the labeling of its package in such a way so as to strikingly resemble the overall appearance of the Artus package. Each is housed in a see-through package—Nordic in plastic and Artus in cellophane. Both parties use a similar price list and the color identification charts bear the same colors with similar "slogans" indicating the relationship of color to thickness. When labeling and marketing techniques are similar for identical products, the likelihood of confusion is greater.

Another important factor in the consideration of the likelihood of confusion is the deposition testimony relating to actual confusion by purchasers who erroneously identified plain, unmarked colored shims as originating from Artus. Proof that confusion has actually occurred is highly persuasive on the question of whether confusion is likely to occur in the future. The mere possibility of confusion is insufficient. There must be probability or likelihood of confusion to support a claim for unfair competition. *John Wright, Inc., supra*, 419 F.Supp. 292 at 319.

In the instant matter, Woodbury & Co. of Oregon, Metal Services of Illinois, and Federal Steel of Pennsylvania, have complained to Artus concerning the quality of shims which they believed, based upon observation, were manufactured by plaintiff, but in fact, were purchased from Nordic. While the evidence of actual confusion is not overwhelming in quantity, when we consider Nordic's intent to imitate, and the parallel

**1192**

marketing methods, and the similarity in labeling, and the substantial similarities between the products, there is sufficient evidence to conclude that a probability of confusion does exist.

Since there are no genuine issues of material fact with respect to the issues raised by the parties, the motion of The Artus Corporation for summary judgment will be treated as a motion for partial summary adjudication and will be granted on the issue of the liability of defendant, Nordic Co., Inc. The court will order counsel for plaintiff to prepare an injunctive decree within 20 days for signature by the court. Further, we will schedule further hearings concerning the additional relief sought by the plaintiff upon receipt of the injunctive decree.

The motion of Nordic Co., Inc., for summary judgment will be denied.