## LIFE SAVERS CORPORATION v. CURTISS CANDY CO.

### Civ. No. 47 C 1770.

United States District Court
N. D. Illinois, E. D.
May 9, 1949.

Rogers & Woodson and Beverly W. Pattishall, Chicago, Ill., for plaintiff.

Casper W. Ooms, Chicago, Ill., for defendant.

SHAW, District Judge.

The complaint in this case charges that the defendant has infringed plaintiff's Trade-Mark Reg. No. 355,158 by adopting a label for its candy mints. It is alleged to be a colorable imitation of the registered

trade-mark and package used by Life Savers, resulting in actual confusion of goods between the products of the plaintiff and defendant, in addition to the usual allegation of likelihood of confusion. An injunction and accounting are sought.

Defendant admits that plaintiff's registered trade-mark is valid, but denies any infringement, says its own label is distinctive and totally different from that of the plaintiff, that great pains and much care have been taken to avoid any possible confusion; that if any confusion has arisen it has been through the carelessness of others and not by reason of any imitation of labels or fault on its part.

Numerous samples of both labels and packages are in the record, not only as to the products of Life Savers Corporation and Curtiss Candy Company, but of many other competing concerns in the same lucrative field. The products of these various companies are almost identical, being a simple disk-like piece of hard candy of different colors and flavors, but otherwise identical, except that the Life Savers' product has a hole through the center which has not been copied and is not here at issue. It appears that the Life Savers Corporation was first in this field, advertised extensively the candy with the hole and acquired an extremely valuable trade-name and good-will. Inasmuch as this candy retails at about 80 cents a pound for a simple sugar concoction it is only natural that there should have been many others entering the same field, and plaintiff is necessarily bound to make every effort to maintain its position as one of the leaders in that trade.

Life Savers are put out in many different colored packages. In each case the colored package indicates the flavor of the contents, but the only one here at issue is the striped package which contains assorted mints of five different flavors, approximately eleven to the package, and to a certain extent the registered trade-mark indicates the contents of the package.

Curtiss has developed a package for assorted mints which is also striped in various colors with shaded marks between the circular rings so as to give the impression of an actual view of the contents of the package, and to that extent it resembles the package of Life Savers, although the stripes are wider on the Life Savers package and obviously do not give the impression of a transparent wrapping. Curtiss also devotes approximately one-half of its package to a dark blue square, one at either end of the package, sharply in contrast with the rest of the package and containing in large white letters the words Curtiss Assorted Drops. These dark blue fields are so printed on the wrapper as to occupy about half of its space, and to be visible no matter what position the package is in or to what position it may be turned.

The Life Savers package and registered trade-mark are dominated by the words Life Savers, likewise so printed in three different positions on the wrapper as to be visible and prominent in whatever position that package may lie and to whatever position it may be turned. And the same is true of the words Five Flavor, also printed in three different positions on the wrapper and visible no matter how the package may be turned.

There was a plethora of evidence from some 75 or 80 witnesses in numerous cities throughout the United States who testified that they had by confusion of goods accidentally picked up a package of Curtiss mints when they had wanted a package of Life Savers. There was also evidence in some instances in which merchants deliberately palmed off the Curtiss product for the product of Life Savers, when the customer had asked for the Life Savers assorted mints. This evidence became cumulative in open court to such an extent that the court decided to hear no more of it, but afterwards discovered that there were depositions from about 60 people in different cities to the same effect. It is enough to say that it is evident that there has been some confusion of goods and that some merchants have deliberately substituted one product for the other.

In view of the well-known impossibility of proving a negative, it would have been of no help to the court for an equal number of witnesses to have been brought forward to testify that they had not been confused,

because such evidence would have in no way tended to rebut the testimony of those giving the affirmative evidence. Most of this evidence was obtained by professional witnesses engaged in that particular field and hired for that particular purpose, but there can be no doubt, and the court does find, that there has been some actual confusion of goods.

 There are other matters to be considered. It is assumed by the plaintiff, and this court is asked to assume, that this confusion is due to a similarity of labels and an infringement of the plaintiff's registered trade-mark. This argument and this request ignore other obvious matters which cannot be ignored. Thus, it must be noted that the packages of Life Savers introduced in evidence and the packages of Curtiss assorted mints and the packages of various other competing mint products produced in evidence are all exactly 2⅞ inches long by ⅞ inch in diameter. This may be due to the necessity of fitting vending machines, or for their convenience in handling; but the fact is that all the mints produced were of exactly the same size and diameter. Another element to be considered is the fact that these products all fall within that class of merchandise which is handled by so-called "impulse" sales. In other words, a person passing by a cigar stand or candy counter may suddenly and without premeditation decide to pick up a package of mints, of which there are dozens of varieties on the market. That care and caution in the selection of goods is not applied to this kind of a sale which a purchaser would devote to the selection of an article of more importance, such as a suit of clothes or a pair of shoes. It is probable that a great majority of purchasers do not care particularly what they get so long as they get a package of mints, and it is just as probable that the confusion can be attributed to the size and shapes of the various packages as to the exact wording and coloring of the labels. In the defendant's package the words Curtiss Assorted Drops are as prominent and well distributed about the package as are the words Life Savers and Five Flavor on plaintiff's product. On the defendant's package the shad-

ings between the disks are of such a character as to give the impression of picturing the contents of the package. In fact, it is of such character as to display the actual contents of the package as if it were wrapped in cellophane or some other transparent material. I believe that the defendant has taken every reasonable means to prevent confusion of goods, and unless Life Savers Corporation is to be given a patent on all colored candy mints it must be held that the trade-mark is not infringed. I believe that the cases of Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424, and Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, sufficiently sustain this view.

The order will be that the complaint be dismissed for want of equity, plaintiff's costs.