## AMERICAN CHICLE CO. v. TOPPS CHEWING GUM, Inc., et al.

### Civ. No. 10443.

United States District Court
E. D. New York.

April 1, 1953.

Frank Makara, New York City (W. Lee Helms and A. J. Nydick, New York City, of counsel), for plaintiff.

Pennie, Edmonds, Morton, Barrows & Taylor and George E. Middleton, New York City, (George E. Middleton, New York City, of counsel), for defendants.

BYERS, District Judge.

This is an unfair competition cause in which is involved a charge of trade-mark infringement. The respective parties manufacture and sell candy coated chewing gum, but only that in which peppermint flavor is used is involved in this controversy, and seemingly that is the sole flavor used by the defendant.

The issues, though somewhat elaborately pleaded, are as substantially stated above.

The defendant's counterclaim prays for cancellation of the plaintiff's mark as being invalid and having been abandoned; as to the latter, the argument is unsupported by the testimony and as to the former—if the contention really survived the trial—it is found to be without support.

The testimony and exhibits clearly reveal defendant's adaptation of a somewhat distorted form of the plaintiff's registered trade-mark hereinafter described, as applied to containers of ten or twelve peppermint flavored candy coated pieces of chewing gum; the same box color as used for many years by the plaintiff was chosen for

---

the defendant's purposes, and the general appearance of the competing containers is substantially similar, except for the prominent use by the defendant of the word Topps to identify its confection in contrast to the plaintiff's trade-mark Chiclets.

As to those words, obviously there can be no question of simulation, for as used the color and type and general ocular impact are completely dissimilar.

If the defendant had chosen a color other than yellow in which to purvey its product instead of the same shade and tint in which plaintiff's peppermint gum is offered to the public, it would not have revealed an apparent purpose to come as close to the plaintiff's package as the law might close its eyes to, so long as Topps is used instead of Chiclets.

Plaintiff's case is not based upon color imitation and for good reason, but no one is forbidden to understand that there was nothing inadvertent in that aspect of the defendant's selection of a costume for its wares.

The issues being thus clearly drawn, the testimony as illuminated by the exhibits, yields the following

### Findings.

1. The plaintiff is a corporation of the State of New Jersey, having a principal office in the Borough and County of Queens, City and State of New York, and within the jurisdiction of this court.

2. The defendant, Topps Chewing Gum, Inc., is a New York corporation, having its place of business in the Borough of Brooklyn, City and State of New York. The complaint named the individuals, Joseph E. Shorin, Philip Shorin and Abram Shorin, as defendants but at the trial the complaint as to them was dismissed without opposition.

3. The court has jurisdiction by reason of the trade-mark aspect of the controversy and by reason of diversity as to the unfair competition alleged by the plaintiff.

4. The trade-mark in suit is the plaintiff's trade-mark No. 382,280, registered in the United States Patent Office on October 22, 1940, for chewing gum in Class 46, described as follows:

"The trade-mark consists of an O shaped figure colored red having a parallelogram of light shade, usually white, extending horizontally from the central right portion of such figure, together with parallel bands, over and under such figure and parallelogram, of a dark color contrasting with that of the parallelogram, as shown in the drawing. The lining on the O shaped figure denotes the red color, and the lining on the bands indicates shading only. No claim is made to the representation of a carton apart from the other features of the mark shown on the drawing."

5. Said trade-mark was adopted by the plaintiff in 1939 and has been continuously used in its general business, and for the purposes of this case, on cardboard boxes containing ten or twelve pieces of peppermint flavored candy coated chewing gum.

6. The boxes portray also the plaintiff's trade-mark Chiclets printed in black Old English letters, in the parallelogram referred to in Finding 4.

7. The boxes are yellow in color, which provides a striking contrast to the O shaped figure which is colored red; the words "peppermint" and "candy coated gum" appear in white at the top and bottom respectively thereof.

8. The combination of the O shaped figure and the parallelogram as presented are in the general conformation of a key.

9. Peppermint Chiclets alone are so marketed by plaintiff, its other flavored Chiclets being purveyed in boxes of different colors.

10. The center of the O shaped figure is composed of a transparent material, whereby it serves as a window through which some of the contents of the box are to be observed.

11. The competing boxes of the parties are usually to be found on the counters of retail stores, accessible to customers who make their purchase by placing a coin on the counter and picking up the box, some-

times without the intervention of the salesman.

12. Prior to 1949, the defendant's product was offered to the public in small packets containing perhaps two nuggets, which in turn were contained in canisters from which sales were made. Those packets were entirely different in color scheme, title and wording.

13. In 1949, the defendant adopted a box in which a dozen of its peppermint candy coated chewing gum nuggets were offered for sale in competition with the product of the plaintiff.

14. The defendant's box is slightly larger than that of the plaintiff, as are the individual nuggets. The defendant's box is 4″ long by 2″ wide, while plaintiff's is 3⅝″ long by 1¾″ wide.

15. The defendant's box is the same color and tint as that of the plaintiff, and on the top and bottom there appears a design composed of a roughly circular element comparable to the O shaped figure of the plaintiff's box, and extending from the side thereof is a parallelogram smaller in size than that of the plaintiff but serving as a white background for its designation, Topps.

16. The word Topps is printed in red with black lines and is clearly to be distinguished from the word Chiclets as used by the plaintiff.

17. The circular design roughly corresponding to the plaintiff's O shaped figure is green on top, containing the word "Peppermint" and red on the bottom, containing the words "Candy Coated Gum," all words appearing in white.

18. In addition, the printed words "Refreshing" and "Flavorful" appear on the top and bottom of the defendant's box, above and below the words Topps.

19. The presentation of the combination of the circular element and the panel on the defendant's box is roughly comparable but not strikingly similar to the configuration of the key which appears on the plaintiff's box, and the circular element which has been described is not accurately a circle since the upper and lower elements flare out from the circumference.

20. The center of the circular element of the defendant's box is likewise of transparent material, whereby the contents of the box are somewhat revealed.

21. The adaptation of the plaintiff's said trade-mark by the defendant is not complete but it is recognizable as a partial appropriation of a somewhat distorted form, of the essential elements thereof.

22. The use by the plaintiff of its trade-mark Chiclets on the boxes which also portray the registered trade-mark heretofore described, does not affect the issues in this cause.

23. The plaintiff has not abandoned its trade-mark registered in the United States Patent Office, bearing Number 382,280.

24. Defendant's peppermint flavored candy coated pieces of chewing gum are ammoniated as stated on the sides of the boxes, which is not true of plaintiff's product.

25. There is no proof in this case of actual confusion on the part of purchasers of the competing products.

26. The usual purchases of these boxes are made from counters in retail establishments, such as news and cigar stand counters and shops, on which all similar wares are displayed for sale at retail, and it is unusual for a customer to ask for such a candy coated chewing gum by name; the practice is for the buyer to select a box and pay for it.

27. A brief visual observation by such a customer might well fail to apprise him of the different sources of manufacture of these competing products.

28. The modest cash outlay involved and the informality of the transaction of purchase are not calculated to lead to protest on the part of a purchaser who had in fact so acquired the defendant's product when he may have intended to buy that of the plaintiff's.

29. In the usual retail purchase of one of such boxes the similarity in appearance of the respective boxes here in suit is such as to be likely to cause confusion on the part of an appreciable number of ordinarily prudent purchasers, namely, purchasers of chewing gum who are more concerned with

buying a peppermint flavored piece of chewing gum than with the designated product of a given manufacturer.

### Conclusions of Law.

■ The plaintiff is entitled to judgment against the defendant for an injunction as prayed and dismissal of the counterclaim with costs.

There will be no award for damages and profits, in view of the paucity of the record in this respect.

### Comment.

Little would be justified by way of exposition of the foregoing. The test announced in the case of Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 199 F.2d 602 and 603 has been applied in making the findings and reaching the conclusion above stated.

The reliance by defendant upon the case of Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4, 8, is deemed to be unavailing for the reason that this cause does not involve a claim to a particular style of multi-colored wrappers such as are described in that opinion, particularly in view of the practice on the part of many manufacturers of small candies sold in cylindrical packages as therein described. That opinion, in referring to "impulse buyers", in quoting the District Court 87 F.Supp. 16 reproduces the following:

"* * * It is just as probable that the confusion can be attributed to the size and shapes of the various packages as to the exact wording and coloring of the labels. * * *"

That language clearly distinguishes the facts then under examination from those presented by this record.

The opinion goes on to discuss the bearing of color in such matters, and as to that no issue is here adjudicated.

Again that opinion observes in reference to unfair competition:

"Plaintiff's and defendant's labels lack any similarity in appearance except that the background of each has multi-colored stripes and, as we have seen, this is a functional aspect of each label. * * * We agree with

the trial court that the defendant has taken every reasonable precaution to prevent a confusion of its goods with the product of plaintiff or others."

The contrast between the two cases is clearly revealed in the language just quoted.

This defendant urges reliance upon a somewhat unguarded observation made by this court in the course of the trial with respect to alleged confusion on the part of a salesman of the plaintiff, and it seemed then and now that anyone who was selling the plaintiff's goods ought to be able to detect the difference between the products of these two parties, but that does not touch the likelihood of confusion on the part of the casual purchaser, as is sought to be explained in Findings Nos. 26 to 29 above.

■ It has not been overlooked that the defendant's assertion of abandonment by plaintiff of the trade-mark in question, is perhaps an unconscious plea in avoidance which would not have been resorted to except as a tacit admission of attempted appropriation. In any case, the evidence does not bear out the contention.

Settle judgment.