## KELLOGG COMPANY *v.* NATIONAL BISCUIT COMPANY.

Nos. 2 and 56.   Argued October 10, 1938.—Decided November 14, 1938.

---

112

*Mr. Thomas D. Thacher,* with whom *Messrs. W. H. Crichton Clarke, Edward S. Rogers, Robert T. Mc-Cracken, Richard H. Demuth,* and *E. Ennalls Berl* were on the brief, for petitioner.

*Mr. David A. Reed,* with whom *Messrs. Charles A. Vilas, Thomas G. Haight,* and *Drury W. Cooper* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit was brought in the federal court for Delaware [1] by National Biscuit Company against Kellogg Company to enjoin alleged unfair competition by the manufacture and sale of the breakfast food commonly known as shredded wheat. The competition was alleged to be unfair mainly because Kellogg Company uses, like the plaintiff, the name shredded wheat and, like the plaintiff, produces its biscuit in pillow-shaped form.

Shredded wheat is a product composed of whole wheat which has been boiled, partially dried, then drawn or pressed out into thin shreds and baked. The shredded wheat biscuit generally known is pillow-shaped in form. It was introduced in 1893 by Henry D. Perky, of Colo-

---

[1] The federal jurisdiction rests on diversity of citizenship—National Biscuit Company being a New Jersey corporation and Kellogg Company a Delaware corporation. Most of the issues in the case involve questions of common law and hence are within the scope of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938). But no claim has been made that the local law is any different from the general law on the subject, and both parties have relied almost entirely on federal precedents.

rado; and he was connected until his death in 1908 with companies formed to make and market the article. Commercial success was not attained until the Natural Food Company built, in 1901, a large factory at Niagara Falls, New York. In 1908, its corporate name was changed to "The Shredded Wheat Company"; and in 1930 its business and goodwill were acquired by National Biscuit Company.

Kellogg Company has been in the business of manufacturing breakfast food cereals since its organization in 1905. For a period commencing in 1912 and ending in 1919 it made a product whose form was somewhat like the product in question, but whose manufacture was different, the wheat being reduced to a dough before being pressed into shreds. For a short period in 1922 it manufactured the article in question. In 1927, it resumed manufacturing the product. In 1928, the plaintiff sued for alleged unfair competition two dealers in Kellogg shredded wheat biscuits. That suit was discontinued by stipulation in 1930. On June 11, 1932, the present suit was brought. Much evidence was introduced; but the determinative facts are relatively few; and as to most of these there is no conflict.

In 1935, the District Court dismissed the bill. It found that the name "Shredded Wheat" is a term describing alike the product of the plaintiff and of the defendant; and that no passing off or deception had been shown. It held that upon the expiration of the Perky patent No. 548,086 issued October 15, 1895, the name of the patented article passed into the public domain. In 1936, the Circuit Court of Appeals affirmed that decree. Upon rehearing, it vacated, in 1937, its own decree and reversed that of the District Court, with direction "to enter a decree enjoining the defendant from the use of the name 'Shredded Wheat' as its trade-name and from advertising or offering for sale its product in the form

and shape of plaintiff's biscuit in violation of its trademark; and with further directions to order an accounting for damages and profits." In its opinion the court described the trade-mark as "consisting of a dish, containing two biscuits submerged in milk." 91 F. 2d 150, 152. We denied Kellogg Company's petition for a writ of certiorari, 302 U. S. 733; and denied rehearing, 302 U. S. 777.

On January 5, 1938, the District Court entered its mandate in the exact language of the order of the Circuit Court of Appeals, and issued a permanent injunction. Shortly thereafter National Biscuit Company petitioned the Circuit Court of Appeals to recall its mandate "for purposes of clarification." It alleged that Kellogg Company was insisting, contrary to the court's intention, that the effect of the mandate and writ of injunction was to forbid it from selling its product only when the trade name "Shredded Wheat" is applied to a biscuit in the form and shape of the plaintiff's biscuit and is accompanied by a representation of a dish with biscuits in it; and that it was not enjoined from making its biscuit in the form and shape of the plaintiff's biscuit, nor from calling it "Shredded Wheat," unless at the same time it uses upon its cartons plaintiff's trade-mark consisting of a dish with two biscuits in it. On May 5, 1938, the Circuit Court of Appeals granted the petition for clarification and directed the District Court to enter a decree enjoining Kellogg Company (96 F. 2d 873):

"(1) from the use of the name 'SHREDDED WHEAT' as its trade name, (2) from advertising or offering for sale its product in the form and shape of plaintiff's biscuit, and (3) from doing either."

Kellogg Company then filed a petition for a writ of certiorari to review the decree as so clarified, and also sought reconsideration of our denial of its petition for certiorari to review the decree as entered in its original form. In support of these petitions it called to our attention the

decision of the British Privy Council in *Canadian Shredded Wheat Co.* v. *Kellogg Co. of Canada,* 55 R. P. C. 125, rendered after our denial of the petition for certiorari earlier in the term. We granted both petitions for certiorari.[2]

The plaintiff concedes that it does not possess the exclusive right to make shredded wheat. But it claims the exclusive right to the trade name "Shredded Wheat" and the exclusive right to make shredded wheat biscuits pillow-shaped. It charges that the defendant, by using the name and shape, and otherwise, is passing off, or enabling others to pass off, Kellogg goods for those of the plaintiff. Kellogg Company denies that the plaintiff is entitled to the exclusive use of the name or of the pillow-shape; denies any passing off; asserts that it has used every reasonable effort to distinguish its product from that of the plaintiff; and contends that in honestly competing for a part of the market for shredded wheat it is exercising the common right freely to manufacture and sell an article of commerce unprotected by patent.

*First.* The plaintiff has no exclusive right to the use of the term "Shredded Wheat" as a trade name. For that is the generic term of the article, which describes it with a fair degree of accuracy; and is the term by which the biscuit in pillow-shaped form is generally known by the public. Since the term is generic, the original maker of the product acquired no exclusive right to use it. As

---

[2] Rights here claimed by plaintiff have been involved in much other litigation. See *Natural Food Co.* v. *Williams,* 30 App. D. C. 348; *Shredded Wheat Co.* v. *Humphrey Cornell Co.,* 250 F. 960 (C. C. A. 2d); *Kellogg Co.* v. *National Biscuit Co.,* 71 F. 2d 662 (C. C. A. 2d); *Canadian Shredded Wheat Co.* v. *Kellogg Co. of Canada,* 55 R. P. C. 125; *In re* Trade Mark No. 500761, Registered in the Name of the Shredded Wheat Co., Ltd., in Class 42 (1938) Supreme Court of Judicature, Court of Appeal; also *Natural Food Co.* v. *Buckley,* No. 28,530, U. S. Dist. Ct., N. Dist. Ill., East. Div. (1908).

Kellogg Company had the right to make the article, it had, also, the right to use the term by which the public knows it. Compare *Saxlehner* v. *Wagner*, 216 U. S. 375; *Holzapfel's Compositions Co.* v. *Rahtjen's American Composition Co.*, 183 U. S. 1. Ever since 1894 the article has been known to the public as shredded wheat. For many years, there was no attempt to use the term "Shredded Wheat" as a trade-mark. When in 1905 plaintiff's predecessor, Natural Food Company, applied for registration of the words "Shredded Whole Wheat" as a trade-mark under the so-called "ten year clause" of the Act of February 20, 1905, c. 592, § 5, 33 Stat. 725, William E. Williams gave notice of opposition. Upon the hearing it appeared that Williams had, as early as 1894, built a machine for making shredded wheat, and that he made and sold its product as "Shredded Whole Wheat." The Commissioner of Patents refused registration. The Court of Appeals of the District of Columbia affirmed his decision, holding that "these words accurately and aptly describe an article of food which . . . has been produced . . . for more than ten years . . ." *Natural Food Co.* v. *Williams,* 30 App. D. C. 348.[3]

Moreover, the name "Shredded Wheat," as well as the product, the process and the machinery employed in making it, has been dedicated to the public. The basic patent for the product and for the process of making it, and many other patents for special machinery to be used in making the article, issued to Perky. In those patents the term "shredded" is repeatedly used as descriptive of the product. The basic patent expired October 15, 1912; the

[3] The trade-marks are registered under the Act of 1920. 41 Stat. 533, 15 U. S. C. §§ 121–28 (1934). But it is well settled that registration under it has no effect on the domestic common-law rights of the person whose trade-mark is registered. *Charles Broadway Rouss, Inc.* v. *Winchester Co.*, 300 F. 706, 713, 714 (C. C. A. 2d); *Kellogg Co.* v. *National Biscuit Co.*, 71 F. 2d 662, 666 (C. C. A. 2d).

others soon after. Since during the life of the patents "Shredded Wheat" was the general designation of the patented product, there passed to the public upon the expiration of the patent, not only the right to make the article as it was made during the patent period, but also the right to apply thereto the name by which it had become known. As was said in *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169, 185:

"It equally follows from the cessation of the monopoly and the falling of the patented device into the domain of things public, that along with the public ownership of the device there must also necessarily pass to the public the generic designation of the thing which has arisen during the monopoly. . . . To say otherwise would be to hold that, although the public had acquired the device covered by the patent, yet the owner of the patent or the manufacturer of the patented thing had retained the designated name which was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly."

It is contended that the plaintiff has the exclusive right to the name "Shredded Wheat," because those words acquired the "secondary meaning" of shredded wheat made at Niagara Falls by the plaintiff's predecessor. There is no basis here for applying the doctrine of secondary meaning. The evidence shows only that due to the long period in which the plaintiff or its predecessor was the only manufacturer of the product, many people have come to associate the product, and as a consequence the name by which the product is generally known, with the plaintiff's factory at Niagara Falls. But to establish a trade name in the term "shredded wheat" the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. This it has not done. The

showing which it has made does not entitle it to the exclusive use of the term shredded wheat but merely entitles it to require that the defendant use reasonable care to inform the public of the source of its product.

The plaintiff seems to contend that even if Kellogg Company acquired upon the expiration of the patents the right to use the name shredded wheat, the right was lost by delay. The argument is that Kellogg Company, although the largest producer of breakfast cereals in the country, did not seriously attempt to make shredded wheat, or to challenge plaintiff's right to that name until 1927, and that meanwhile plaintiff's predecessor had expended more than $17,000,000 in making the name a household word and identifying the product with its manufacture. Those facts are without legal significance. Kellogg Company's right was not one dependent upon diligent exercise. Like every other member of the public, it was, and remained, free to make shredded wheat when it chose to do so; and to call the product by its generic name. The only obligation resting upon Kellogg Company was to identify its own product lest it be mistaken for that of the plaintiff.

*Second.* The plaintiff has not the exclusive right to sell shredded wheat in the form of a pillow-shaped biscuit—the form in which the article became known to the public. That is the form in which shredded wheat was made under the basic patent. The patented machines used were designed to produce only the pillow-shaped biscuits. And a design patent was taken out to cover the pillow-shaped form.[4] Hence, upon expiration of the patents

[4] The design patent would have expired by limitations in 1909. In 1908 it was declared invalid by a district judge on the ground that the design had been in public use for more than two years prior to the application for the patent and theretofore had already been dedicated to the public. *Natural Foods Co.* v. *Bulkley,* No. 28,530, U. S. Dist. Ct., N. Dist. Ill., East. Div. (1908).

the form, as well as the name, was dedicated to the public. As was said in *Singer Mfg. Co.* v. *June Mfg. Co., supra,* p. 185:

"It is self evident that on the expiration of a patent the monopoly granted by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted. It follows, as a matter of course, that on the termination of the patent there passes to the public the right to make the machine in the form in which it was constructed during the patent. We may, therefore, dismiss without further comment the complaint, as to the form in which the defendant made his machines."

Where an article may be manufactured by all, a particular manufacturer can no more assert exclusive rights in a form in which the public has become accustomed to see the article and which, in the minds of the public, is primarily associated with the article rather than a particular producer, than it can in the case of a name with similar connections in the public mind. Kellogg Company was free to use the pillow-shaped form, subject only to the obligation to identify its product lest it be mistaken for that of the plaintiff.

*Third.* The question remains whether Kellogg Company in exercising its right to use the name "Shredded Wheat" and the pillow-shaped biscuit, is doing so fairly. Fairness requires that it be done in a manner which reasonably distinguishes its product from that of plaintiff.

Each company sells its biscuits only in cartons. The standard Kellogg carton contains fifteen biscuits; the plaintiff's twelve. The Kellogg cartons are distinctive. They do not resemble those used by the plaintiff either in size, form, or color. And the difference in the labels is striking. The Kellogg cartons bear in bold script the names "Kellogg's Whole Wheat Biscuit" or "Kellogg's

Shredded Whole Wheat Biscuit" so sized and spaced as to strike the eye as being a Kellogg product. It is true that on some of its cartons it had a picture of two shredded wheat biscuits in a bowl of milk which was quite similar to one of the plaintiff's registered trademarks. But the name Kellogg was so prominent on all of the defendant's cartons as to minimize the possibility of confusion.

Some hotels, restaurants, and lunchrooms serve biscuits not in cartons and guests so served may conceivably suppose that a Kellogg biscuit served is one of the plaintiff's make. But no person familiar with plaintiff's product would be misled. The Kellogg biscuit is about two-thirds the size of plaintiff's; and differs from it in appearance. Moreover, the field in which deception could be practiced is negligibly small. Only 2½ per cent of the Kellogg biscuits are sold to hotels, restaurants and lunchrooms. Of those so sold 98 per cent are sold in individual cartons containing two biscuits. These cartons are distinctive and bear prominently the Kellogg name. To put upon the individual biscuit some mark which would identify it as the Kellogg product is not commercially possible. Relatively few biscuits will be removed from the individual cartons before they reach the consumer. The obligation resting upon Kellogg Company is not to insure that every purchaser will know it to be the maker but to use every reasonable means to prevent confusion.

It is urged that all possibility of deception or confusion would be removed if Kellogg Company should refrain from using the name "Shredded Wheat" and adopt some form other than the pillow-shape. But the name and form are integral parts of the goodwill of the article. To share fully in the goodwill, it must use the name and the pillow-shape. And in the goodwill Kellogg Company is as free to share as the plaintiff. Compare *William R. Warner & Co.* v. *Eli Lilly & Co.*, 265 U. S. 526, 528, 530.

Moreover, the pillow-shape must be used for another reason. The evidence is persuasive that this form is functional—that the cost of the biscuit would be increased and its high quality lessened if some other form were substituted for the pillow-shape.

Kellogg Company is undoubtedly sharing in the goodwill of the article known as "Shredded Wheat"; and thus is sharing in a market which was created by the skill and judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested. There is no evidence of passing off or deception on the part of the Kellogg Company;[5] and it has taken every reasonable precaution to prevent confusion or the practice of deception in the sale of its product.

*Fourth.* By its "clarifying" decree, the Circuit Court of Appeals enjoined Kellogg Company from using the picture of the two shredded wheat biscuits in the bowl only in connection with an injunction against manufacturing the pillow-shaped biscuits and the use of the term shredded wheat, on the grounds of unfair competition.[6]

[5] Attention is called to the fact that the label on these Kellogg cartons bears, in small letters, the words: "The original has this [W. K. Kellogg's] signature." Objection to their use was not charged in the bill; no such issue was raised at the trial; and the use was not enjoined. Counsel for the Company admitted in the argument before us that its use, common as applied to other Kellogg products, should not have been made on cartons of shredded wheat; and stated that the use had been discontinued long before entry of the "clarifying" decree.

[6] In its opinion clarifying the mandate, the Circuit Court of Appeals, after considering the provisions concerning the name and the form of the biscuit, said (96 F. 2d 873, 875):

"The only remaining question is whether, in view of the fact that the order of April 12, 1937, did not specifically provide for an injunc-

The use of this picture was not enjoined on the independent ground of trade-mark infringement. Since the National Biscuit Company did not petition for certiorari, the question whether use of the picture is a violation of that trade-mark although Kellogg Company is free to use the name and the pillow-shaped biscuit is not here for review.

*Decrees reversed with direction to dismiss the bill.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER are of opinion that the decree of the Circuit Court of Appeals is correct and should be affirmed. To them it seems sufficiently clear that the Kellogg Company is fraudulently seeking to appropriate to itself the benefits of a goodwill built up at great cost by the respondent and its predecessors.

---

tion against the violation of the two-biscuit-in-a-dish trade-mark (although it was intended to do so) we have any jurisdiction to amend the mandate so as to include specifically such a provision. As there may be some doubt on this question, we will not amend the mandate so as to provide a specific injunction against the use of the two-biscuit-in-a-dish trade-mark. Its use on a carton or in advertising matter, when the defendant is not permitted to use the word 'Shredded Wheat' as a trade-name or to advertise or sell biscuits in the pillow-shape form, would manifestly be so improper and so likely to mislead that we will assume that the appellee will not use it."