## COCA–COLA CO. v. STANDARD BOTTLING CO.

### No. 7854.

District Court, D. Colorado, at Denver.

Dec. 22, 1942.

Winston S. Howard (of Pershing, Bosworth, Dick & Dawson), of Denver, Colo., and Lloyd Paul Stryker and Harold W. Wolfram, both of New York City, for plaintiff.

Morrison Shafroth and W. W. Grant (of Grant, Shafroth & Toll), both of Denver, Colo., for defendant.

SYMES, District Judge.

This suit, started in February, 1925, by the plaintiff filing its bill, asks for protection of its trade-mark rights to its Coca-Cola syrup, and asks that defendant be restrained from selling or exposing for sale any products under a similar name, or a name that would be a colorable imitation of the trade-mark of the plaintiff, to wit, "Coca-Cola", or selling or delivering in response to calls for "Coca-Cola" any beverage other than that made of the Coca-Cola syrup manufactured by the plaintiff, or infringing upon the rights of the plaintiff. Shortly thereafter the parties composed their differences, and a final decree was entered by consent of the parties. This was short, concise, and very clear. It restrained the defendant from infringing the trade rights of the Coca-Cola Company, or selling and delivering in response to calls for Coca-Cola any beverage other than that made from the syrup manufactured by the plaintiff, or from market-

ing a product of the same identical or similar color long used by the Coca-Cola Company in its product which may be or might be used as a substitute for Coca-Cola, or from selling or exposing for sale any beverage other than the product of the Coca-Cola Company having the peculiar distinctive color and appearance of the plaintiff's product or any approximation thereof likely to deceive the public, without such differentiation as will effectually prevent the passing off of a spurious product as that of the Coca-Cola Company.

Defendant was further restrained from selling or offering for sale its certain products under the name of Cherry Cola, Ayers Cola, Standard Cola or any like word, name or names, or from selling or exposing for sale any product other than genuine Coca-Cola manufactured by the Coca-Cola Company in response to calls for "Coke."

This consent decree stood until September 3, 1941, when the defendant filed this petition to modify the consent decree, asking that the same be modified so that it could put out a new product and use the word "cola" in connection therewith. The whole controversy centers around the particular word "cola" and whether the Court can modify the decree and permit the defendant to use that word as part of the name of a product it desires to put upon the market. The particular name defendant desires to use has not been disclosed and is not now material.

The first question is the right of the Court to modify a consent decree, which plaintiff claims is an agreement, having been entered by consent of the parties. For reasons heretofore stated the Court feels the chancellor can modify his own decree when circumstances have changed since the entry of the decree, or other good and sufficient reasons are shown which appeal to the chancellor as sufficient to justify a change in the decree. This Court has heretofore held that it has the right to modify this decree.

The Coca-Cola Company has made a great business success of this product. Necessarily such a successful article of trade has been imitated. Many attempts have been made to reap the benefit of plaintiff's advertising and the tremendous business that it has developed. This has resulted in a great deal of litigation in the state and federal courts, and there is hardly a volume of the reported decisions of the federal court that does not contain a case on some of the many questions arising out of these attempts to cash in, so to speak, upon the success of the plaintiff's product, Coca-Cola. In fact the plaintiff's chief trouble, as I read the cases, seems to be it has been too successful. The appellate courts have come to the conclusion that its monopoly resulting from the large demand it has created for its product has resulted in Coca-Cola becoming almost a national drink, and that the term "cola drinks" means a class of drinks distinguished from the plaintiff's particular product.

Judge Learned Hand in the Second Circuit recently said that in disputes as to what the law is on a particular point, lower courts have the right to follow what he called the trend of the decisions on any particular question; that is, where the decisions of the appellate courts tended in a certain direction, it was an indication to the lower courts they should follow the trend, and in a sense anticipate the trend.

The plaintiff, of course, has an exclusive right to the use of the word Coca-Cola, and the defendant or nobody else has any right to use that term or to put upon the market any product which in any way imitates it or deprives the plaintiff of the benefit of the name. However, as I read the decisions, including some late cases in the Supreme Court, I am impressed with the statement made in Dixi-Cola Laboratories v. Coca-Cola Co., 4 Cir., 117 F.2d 352, at page 359:

"No reported case has come to our attention which distinctly holds that the word 'cola' cannot be used as part of a name of a beverage provided that the whole name is not confusingly similar to Coca-Cola."

Thus the word "cola" has become descriptive of a class of drinks, rather than the name of the plaintiff's product, or that of any individual bottler.

I have not seen the decision of the Privy Council of the House of Lords of England, but I am informed by counsel, and it is not disputed, that it held the word "cola" cannot be monopolized, and that a trade-mark such as Pepsi-Cola does not infringe Coca-Cola. That seems to be the law. It there-

fore seems to be or soon will be the law, if the question ever comes squarely before the Supreme Court, that the plaintiff's competitors have the right to use the word "cola" as part of a beverage name when used with a prefix which distinguishes it from Coca-Cola.

This Court feels competent, and it has the power, to supervise the name used by the defendant if it attempts to use the word "cola" as a result of the modified decree. We will scan very carefully any name that defendant may adopt to see that it does not infringe any rights of the plaintiff or does not in any way enable the defendant to pass its product off as that of the plaintiff or as Coca-Cola.

This case is somewhat similar to three cases:

1st. The Shredded Wheat case, Kellogg v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 437, holding that the term "shredded wheat" is generic and the general designation of a product, and no exclusive right to its use may be acquired.

2nd. The Aspirin case, Bayer Co. v. United Drug Co., D.C., 272 F. 505, where the plaintiff lost the exclusive right to the use of the name of the drug; that if buyers of a drug sold by plaintiff under a trade name understand by the name only the kind of goods sold, plaintiff is not entitled to prevent the use of the name by others, whatever efforts it may have made to get buyers to understand the name as referring to the source of origin.

3rd. Du Pont Cellophane Co. v. Waxed Products Co., 2 Cir., 85 F.2d 75, where the Court found in a suit for infringement of the trade-mark "Cellophane" the evidence established that "ordinarily term signified transparent cellulose film rather than article of manufacture of trade-mark owner, and hence dealer in such film of manufacture other than that of trade-mark owner would be required only to designate the maker of the film in advertising and filling orders for 'Cellophane'."

The same I think is true here, or soon will be. "Cola" designates a type of drink which plaintiff has created a great demand for, but which now to the public and consumers of soft drinks means a type of drink rather than the product produced by the plaintiff corporation.

Considerable evidence was introduced yesterday of psychological experiments made upon students of the Denver University and also at the Barnes Commercial School. That testimony showed the reaction the students gave to the word "cola" was due to plaintiff's very successful advertising. The tests actually reflected the impressions made on the students by the advertising of the Coca-Cola Company, which seems to have been very effective in putting its name before the public and creating a demand for its product.

As to this particular cola nut which it is claimed is the source of the flavor of these so-called cola drinks, it seems to be established that the cola nut and its derivatives in the form of extracts and powders are now known as the cola flavor. It is conceivable that a person may know the taste or flavor of cola, and that it means a particular type of drink, without having any knowledge at all of the original cola nut or where it grows. We may know a great deal about an article without knowing its origin or where its component parts come from. It is apparent that no cola product has very much of this flavoring in it. Coca-Cola is made up, according to counsel's statement, of sugar and water and a little bit of cola extract. That is true of every soft drink, whether it is Coca-Cola, lime juice, orange juice or any similar beverage designated by the name of a particular flavor.

The law is very well stated by the so-called inferior state judge of Delaware in the case of Coca-Cola Co. v. Nehi Corp., Del.Ch., 25 A.2d 364. I have been quite impressed by the reasoning and his full citation of authorities in that opinion. I have relied upon it in the decision which I hereby make. It contains a very clear review of all the decisions.

The Court will permit the consent decree to be modified, and take up with counsel in any manner indicated the extent to which the decree shall be modified. Anything in the decree which prevents the defendant from putting out a product which is a spurious imitation of plaintiff's product, or the selling of its product under the name of the defendant, will be restrained in the future as in the past. The decree will be amended only to allow the free use of the word "cola" as a part of a descriptive name of a defendant's product, if it cares to put one out.