**DETROIT STAMPING CO.**

v.

**WEST POINT MFG. CO.**

**No. 13102.**

United States District Court,
E. D. Michigan, S. D.
June 24, 1954.

Supplemental Findings of Fact and
Conclusions of Law
Aug. 24, 1954.

2. 50 U.S.C.A.Appendix, § 1971d

Lloyd M. Forster, Farley, Forster & Farley, Detroit, Mich., for plaintiff.

Hugh K. Davidson, Detroit, Mich., for defendant.

PICARD, District Judge.

Plaintiff seeks summary judgment under the Lanham Trade Mark Act, Title 15 U.S.C.A. §§ 1051 to 1127. * * *

### Findings of Fact

Plaintiff's patent for a toggle clamp, a device used for clamping parts in industrial production, having recently expired, defendant contends that it now has the right to make and sell an exact reproduction thereof as its own with the single exception that defendant does propose to use its trade name, Wespo, stamped on the outside and company name as the manufacturer. Defendant bases its right under Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L. Ed. 118, and Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

The facts show that there is a secondary meaning to the shape of plaintiff's distinctive toggle clamp and several non-functional features all of which defendant proposes to duplicate. In fact, defendant recently advertised the kind of a toggle clamp it proposed to manufacture by taking a picture of one of plaintiff's toggle clamps, purchased at a retail outlet, and running it in a trade paper as its own. It is further very interesting to note that among the reasons defendant has presented to justify its complete usurpation of plaintiff's device is that it wants to manufacture such a clamp because plaintiff's clamp is inferior in material to the one which defendant desires to make.

Such altruistic and high-flight reasoning does not appeal to this court which

has concluded that defendant's real reason is that plaintiff's article has been a great success, is well advertised, and in much demand.

We further find that defendant's "trade-mark" is not sufficient under the facts in this case to prohibit a probable "palming off" of defendant's product as that of plaintiff. We believe it would constitute fraud if permitted.

### Conclusions of Law

■■ There is no doubt that at the expiration of the patent rights all functional features that had been protected for seventeen years are open to the public. Singer Mfg. Co. v. June Mfg. Co. and Kellogg Co. v. Nat. Biscuit Co., supra. In some instances also this would include certain non-functional parts necessary to the enjoyment of the original patent's functional parts Singer and Kellogg, supra, but even in the Kellogg case, supra, and in the recent case of Shredded Wheat Co. v. Humphrey Cornell Co., 2 Cir., 250 F. 960, it was held that where the patented article

(1) has attained a secondary meaning, as is admitted here; and

(2) is such a device as can be made in a slightly different form while utilizing all patented parts, the law requires the second comer (defendant) to distinguish its article from that of the first comer (plaintiff) to the extent that the public will not be misled or confused.

While we are aware of the danger inherent in giving protection to a trademark or against unfair competition as a possible means of continuing the patent rights beyond the monopoly provided, this is not such a case. Defendant may use all the patented features of the expired patent—if it does so fairly, but we have seldom seen a more flagrant abuse of at least the equitable rights of a patentee than the defendant proposes should receive the blessing of this court. It is still actionable unfair competition to unnecessarily copy non-functional parts of any article or device which gave essence to a general appearance identifying and distinguishing that particular product as associated with a manufacturer whose reputation is of great importance in securing sales. O. & W. Thum Co. v. Dickinson, 6 Cir., 245 F. 609; Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299; Vaughan Novelty Manufacturing Co. v. G. G. Greene Manufacturing Co., 3 Cir., 202 F.2d 172; Eureka Williams Corp. v. McCorquodale, 40 C.C.P. A., Patents, 1028, 205 F.2d 155; Shredded Wheat Co. v. Humphrey Cornell Co., 2 Cir., 250 F. 960; Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Nims, Unfair Competition and Trade Marks, Fourth Edition, Volume I, Sec. 139; Wesson v. Galef, 2 Cir., 286 F. 621.

We must hold that in the case at bar the plaintiff is entitled to the prayer as requested in its bill of complaint.

### Supplemental Findings of Fact

In the light of further showings and argument of counsel in connection with contempt proceedings, the Court makes the following supplemental findings of fact:

The copying by defendant of all appearance details of plaintiff's toggle clamps, as in the case of defendant's advertising, and of all appearance details except color of finish, as in the case of toggle clamps sold by defendant, clearly was unnecessary from a functional standpoint. It is generally apparent from other competitive toggle clamps (plaintiff's Exhibits 5, 6, 7, 10 and 11) which are not confusingly similar in appearance to plaintiff's, that numerous functionally equivalent alternative constructions are available for the various component clamp elements.

For specific example, with reference to plaintiff's clamp as shown in Exhibit 2, it was unnecessary for defendant to copy the distinctive appearance aspects of plaintiff's handle—the offset in the lower vertical handle side bars and the converging upper handle portions extending within a plastic handle grip—all as supplied by no other toggle clamp manufacturer; it was unnecessary to copy plaintiff's distinctive claw shaped for-

ward stop; or the distinctive form of the rear stop ears projecting from the base; or the distinctive curved upper contours of the base elements; or the distinctive sub-base plate element.

Instead, defendant readily could have employed a handle formed as a continuous open loop having flat vertical side elements, or a solid bar interposed between such side elements, or a wooden handle grip recessed to receive straight flat side bar elements; in place of the claw shaped forward stop, defendant could have employed a stop pin seated in the clamping bar, or a round button welded to the handle elements, or a flat tab welded to the clamping bar; in place of the distinctively formed rear stop ears, defendant could have employed a read stop pin seated in the base, or a tab perforated from or welded to the side of the base; in place of the concavely curved upper surfaces of plaintiff's base, defendant could have employed a convex curve, or a straight line or any other contour different from the precise contour of plaintiff's base; in place of plaintiff's sub-base plate welded to horizontal flanges of the upright base elements, defendant could have employed a wrap around integral connection between the upright base elements, or a base plate welded to unflanged upright base elements, or a base having different horizontal shape, contours or hole locations.

Defendant has admitted that none of these features were in any way covered by plaintiff's expired patent, and that such alternative constructions for the various components could be interchangeably used on either plaintiff's or the other competitive toggle clamps in evidence, as is obvious on inspection. Any differences in cost or functional operation of such alternative constructions are clearly insignificant, and there is no question but that defendant could have designed its toggle clamps to incorporate every patented feature and functional attribute of plaintiff's toggle clamps without making them confusingly similar in appearance.

Defendant has recklessly proceeded in the face of action for unfair competition brought by plaintiff before any toggle clamps had been manufactured for sale by defendant, and in the face of an injunction by this Court against defendant's advertising, offering for sale, manufacturing and selling toggle clamps confusingly similar in appearance to plaintiff's toggle clamps, to continue its advertising of exact facsimile copies of plaintiff's toggle clamps, and to manufacture and sell exact copies except for color of finish.

## Conclusions of Law

■ Accordingly defendant has knowingly and fully assumed the risk of any future cost in making necessary changes to avoid confusing similarity of appearance in accordance with this Court's injunction and the requirements of the law applicable to parties found guilty of unfair competition under these circumstances. In this connection the applicable rule has been stated as follows:

"In a contempt proceeding one who has been found guilty of unfair competition must do more than see how close he can with safety come to the name or dress he was enjoined from using on his goods. He must 'get well away from the dividing line between violation of and compliance with the injunction'." Nims, Unfair Competition and Trade Marks, 4th Ed., Vol. II, p. 1188.

Such rule has been recognized by the Sixth Circuit Court of Appeals:

"The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves." Broderick & Bascom Rope Co. v. Manoff, 6 Cir., 41 F.2d 353, 354.