**AIRSTREAM TRAILERS, INC., an Ohio corporation, Plaintiff,**

v.

**Loren CAYO, Lawrence Zuhl and Allen Grams, Defendants.**

Civ. A. No. 2774.

United States District Court
W. D. Michigan, S. D.

Sept. 6, 1963.

Miller & Morriss, Lansing, Mich., E. J. Garmhausen, Sidney, Ohio, of counsel, for plaintiff.

Earl & Webb, Kalamazoo, Mich., for defendants.

KENT, Chief Judge.

This is a suit for damages and injunctive relief based upon the plaintiff's claim that the defendants have been guilty of unfair competition. Plaintiff, Wallace M. Byam, has been engaged in the business of building what the parties agree are properly designated as travel trailers. Mr. Byam started in this business in the thirties, and according to his testimony, taken by deposition, his design was "frozen" in 1937. He engaged in business under his own name, under assumed names, as a consultant and designer for others, and finally under three corporate names, Airstream Trailers, Inc., an Ohio corporation, the original plaintiff in this case; Airstream Trailers, Inc., a California corporation, an added plaintiff in this case as was Mr. Byam, and Airstream Trailer Sales, Inc., a sales organization wholly owned by the plaintiff Byam. Airstream Trailer Sales, Inc. is a sales organization which markets the trailers built by the other two corporations.

Plaintiffs' products are streamlined or bullet or torpedo in shape, built of an aluminum alloy with a rounded body, the outside shells of which are riveted into one effective unit. Plaintiff, Byam, has been directly and indirectly manufacturing trailers similar in appearance and design since he "froze" the design in 1937.

For many years the trailers have been marked as "AIRSTREAM" trailers and unquestionably the product is recognized as one of the finest in the travel trailer field.

In 1955, the individual defendants announced an intent to enter into the travel trailer field with a trailer of similar appearance and design under the name, "ROMANY" coaches and incorporated under the name "ROMANY." Before the

defendants entered into production the representatives of Airstream Trailers, Inc., an Ohio corporation, called at the defendants' place of business to discuss the right of the defendants to build and market trailers of such appearance and design. The representatives of Airstream Trailers, Inc., an Ohio corporation, later pointed out that the name ROMANY was a name which had been used to designate one of the models manufactured by Airstream, and as a result the defendants changed the name of their company and the name of their product to "AVION," and the individual defendants were incorporated as AVION COACH CORPORATION, a Michigan corporation.

In fact this suit was started before the defendants produced any trailers. Having secured advice from competent counsel that the then plaintiff, Airstream Trailers, Inc., an Ohio corporation, had no ownership or exclusive right in and to the design, appearance and construction of the ·Airstream Trailer, defendant, Avion Coach Corporation, went into production and has continued to produce travel trailers at all times since 1955. The evidence shows that each of the parties has prospered in the business. The business of each of the plaintiffs has continued to increase and the business of the defendant, Avion Coach Corporation, has reached the point where it now grosses approximately one and one-half million dollars per year.

The proofs establish without question that the Avion Trailer is so similar in appearance to the Airstream trailer that separately and while moving on the highway it is difficult for one unschooled and untrained in the field to distinguish between the two trailers, although the president of the plaintiff companies stated from the witness stand that he was able to distinguish one from the other on the highway at a distance of a few hundred feet. From the testimony of the executives of the plaintiff companies, and from the testimony of all other witnesses, whether they testified in person or by deposition, it is clear that there is no confusion as to the source of the trailer when it is on a trailer dealer's lot available for purchase.

According to the witnesses produced by the plaintiffs, trailers such as those manufactured by the parties to this case, are marketed at prices which range from $2,500 to $6,000, or more. Plaintiffs' witnesses testified that such trailers are not purchased on impulse, rather the buyers purchase such trailers after a careful examination of the exterior and interior, and apparently after a discussion of the merits of the shape and design of the exterior, the towing qualities, the "self-contained" facilities available, which means that toilets, water, and power are available without outside facilities, and in fact, it would appear from all of the testimony that such trailers as are manufactured by the parties to this case are purchased with great care and after due consideration. One witness suggested that when a man and wife approach the dealer to discuss the purchase of a travel trailer, generally the man is more interested in the exterior and the woman is more interested in the interior.

The plaintiffs' trailers are identified by a distinctive identification plate or decal which is placed on the front, on the rear, and on the side of each trailer. Defendants' trailers are identified by an equally distinctive but substantially different decal or identification plate which appears on the front and rear of each trailer. There was no testimony by any witness that any prospective purchaser ever purchased an AVION trailer in the mistaken belief that he was purchasing an AIRSTREAM trailer, and equally there was no testimony that any purchaser ever purchased an AIRSTREAM trailer in the mistaken belief that he was purchasing an AVION trailer.

It is the theory and claim of the plaintiffs, either together, separately, or in some unexplained manner that each of them, and equally Airstream Trailer Sales, Inc., has an exclusive right to manufacture and market trailers of the construction, design and appearance such

as those which have characterized the Airstream trailer for some years.

It is the theory and claim of the defendants that there is no right of ownership in the appearance, construction or design of such trailers that the plaintiffs well know that there is no such right of ownership, that this lawsuit is just one more step in the harassing tactics of the plaintiffs to prevent any competition with their product, which admittedly is not protected in design, construction or appearance by any patent or copyright.

It is the theory and claim of the plaintiffs, and one which they failed to substantiate, that the defendants deliberately copied the entire design, appearance and construction of the Airstream trailer.

It is suggested in the testimony of the plaintiffs that the construction of the Avion trailer is of a lesser quality than that of the Airstream trailer, and by some devious thinking the plaintiffs reach the conclusion that thereby the reputation of the Airstream trailer, of which they are very jealous, has been damaged. This conclusion was not substantiated by any evidence.

Plaintiffs further suggest that the Avion Coach Corporation has pirated the plaintiffs' advertising methods and is engaged in increasing its volume of advertising as a competitive trailer manufacturer in order to take part of the market which the plaintiffs claim has been built up over a period of years by skillful advertising methods to a great extent by Wallace M. Byam, Airstream Trailers, Inc., an Ohio corporation, Airstream Trailers, Inc., a California corporation, and Airstream Trailers Sales, Inc. It is unnecessary to go into the details of the evidence in this respect since we are satisfied that the law relating to the subject matter of this lawsuit has been long since determined by the Supreme Court of the United States, and by the Court of Appeals for this Circuit.

One of the early cases applicable to the situation here presented is Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118. The Singer case was an effort on the part of Singer Manufacturing Company to prevent all others, and particularly June Manufacturing Company, from copying the distinctive style of the Singer sewing machine, the patent on which had expired, and also to prevent June Manufacturing Company from using the word "Singer" in describing the machine. In effect the Supreme Court of the United States held that the term "Singer" had become a generic term describing a sewing machine, and that such name had become a part of the public domain. The Supreme Court further held that when the patent expired Singer lost the exclusive right to the mode of construction, distinctive shape, appearance and ornamentation. As stated at page 185 of 163 U.S., at page 1008 of 16 S.Ct.:

> "It is self evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted. It follows, as a matter of course, that on the termination of the patent there passes to the public the right to make the machine in the form in which it was constructed during the patent. We may, therefore, dismiss without further comment the complaint, as to the form in which the defendant made his machines."

The same subject matter was reviewed by the United States Supreme Court in Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, which arose out of the monopoly of the use of the name "Shredded Wheat" and the sale of such product in a pillow shaped biscuit. The Supreme Court of the United States said, 305 U.S. at page 120, 59 S.Ct. at page 114:

> "Where an article may be manufactured by all, a particular manufacturer can no more assert exclusive rights in a form in which the public has become accustomed to see the article and which, in the minds of

the public, is primarily associated with the article rather than a particular producer, than it can in the case of a name with the similar connections in the public mind."

Further, 305 U.S. at page 122, 59 S.Ct. at page 115, the Supreme Court says:

"Kellogg Company is undoubtedly sharing in the goodwill of the article known as 'Shredded Wheat'; and thus is sharing in a market which was created by the skill and judgment of plaintiff's predecessor and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested. There is no evidence of passing off or deception on the part of the Kellogg Company; and it has taken every reasonable precaution to prevent confusion or the practice of deception in the sale of its product."

The two cases cited, together with practically all of the other authority on this subject have been carefully reviewed by Circuit Judge Thomas F. McAllister in West Point Manufacturing Company v. Detroit Stamping Company, 6 Cir., 222 F.2d 581. As stated by Judge McAllister on page 589:

"Much is said in cases of unfair competition, involving the copying of the goods of a competitor, about the 'confusion' of the public. In some instances, references to such confusion would seem to imply that if the article copied is identical to the original article, the public, not being able to tell the difference between the two articles, is confused; and that, since the copier is the cause of such confusion, he is accordingly guilty of unfair competition. That is not the law. The confusion for which the copier is held responsible, under the law of unfair competition, is not confusion resulting from the in-

ability on the part of the public to distinguish between similar articles, one of which has been copied from the other. It is rather confusion as to origin, not of goods, which controls on the question of unfair competition; and it is only if there is such relationship or analogy between the goods of a complainant and those of a defendant that ordinary retail purchasers are likely to be deceived as to their origin that there is, in law, unfair competition.

"The identical imitation of the goods of another does not in itself constitute unfair competition. * * *"

Judge McAllister quotes with favor from the Restatement of Law of Torts, relative to Confusion of Source through Imitation of Appearance, and these quotations are found at pages 589, 590, 591 of 222 F.2d.

In West Point Manufacturing Company v. Detroit Stamping Company, supra, there is a complete review of the principle of "secondary meaning", from which it appears that secondary meaning in effect means that the article is identified with its source and in the instant case by the testimony of the plaintiffs' own executive such is not the situation as to these trailers. As stated by the president of the plaintiff companies, Mr. Charles, (at page 148 of the transcript):

"Q. The basic difficulty is distinguishing between the two when they are on the highway?

"Mr. Charles: Righto.

"Q. Is there any problem if you put two of them here on the lot, let's assume that there is a lot on the end of this building and you go in and look at them, can't you tell them apart?

"Mr. Charles: You certainly can."

It seems obvious from the testimony of the president of the plaintiff companies that the trailers are so readily distinguishable that no valid claim of secondary meaning can be asserted, particularly when identifying labels are clearly and

legibly attached to the products of the respective companies.

This court is completely satisfied that this case is controlled in all its aspects by the decision of the Court of Appeals for the Sixth Circuit in West Point Manufacturing Company v. Detroit Stamping Company, 222 F.2d 581, which decision is founded upon Singer Manufacturing Company v. June Manufacturing Company, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118, and Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

Thus it appears to the satisfaction of this court and the court concludes that the plaintiffs have no ownership in the design, shape, appearance or construction of the Airstream trailer, that its suit for unfair competition is without foundation, and the action may be dismissed.

Defendants assert that the plaintiffs' action was filed without any justification whatsoever and for the purposes of harassing the defendants, and causing them to go to the expense of defending this case, in an effort to force them out of the business of manufacturing trailers of the design in question. Defendants assert that under the authorities cited in their briefs, including Even-Cut Abrasive Band and Equipment Corporation v. Cleveland Container Company, 6 Cir., 171 F.2d 873, and National Brass v. Michigan Hardware, D.C., 75 F.Supp. 140, they are entitled to recover costs other than the statutory taxable costs including actual attorney fees. Reasons are set forth by the defendants in support of their position. While the court feels, based upon this record and the attitude of counsel for the plaintiffs, that the sole purpose of the litigation was an effort to force the defendants out of the travel trailer business or at least force them to change to a design wholly unlike the plaintiffs' in appearance, yet we cannot say that the suit was instituted without a belief in the righteousness of the plaintiffs' position. Under all the circumstances the court does not feel that the plaintiffs should be required to pay costs other than those allowed by the statute and rules.

For the reasons herein stated an order may be entered dismissing the plaintiffs' complaint with costs to be taxed in favor of the defendants.