**URANTIA FOUNDATION, Plaintiff,**

v.

**Kristen MAAHERRA, Defendant.**

**Civ. No. 91–0325 PHX WKU.**

United States District Court,
D. Arizona.

Jan. 27, 1995.

L. Dale Owens and Scott A. Wharton, of Booth, Wade & Campbell, Atlanta, GA, for plaintiff.

Joseph D. Lewis, of Cleary & Komen, Washington, DC, for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

URBOM, Senior District Judge.

This cause is before the court on the plaintiff's motion for partial summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. The plaintiff, Urantia Foundation, asserts that neither the free speech nor the religion clauses of the First Amendment to the United States Constitution provide the defendant, Kristen Maaherra, a viable defense to the plaintiff's copyright and trademark infringement claims.

### I. FACTUAL BACKGROUND

The plaintiff initially brought this action to enjoin the defendant from, among other things, infringing upon its copyright to *The URANTIA Book* and infringing upon its registered trademarks to the name "Urantia" and the three concentric circles associated with the Urantia Foundation. The defendant seeks to avoid the plaintiff's claims in part by relying on the First Amendment as a de-

fense. In particular, the defendant states that "[e]ach of the purported claims infringes the Defendant's rights to religious freedom under the First Amendment to the Constitution of the United States and the prohibition placed upon the Congress of the United States in making laws respecting the establishment of religion or the free exercise thereof." ((Revised) Def.'s Substitute 2nd Am. Answer & Countercl. at 5, ¶ 1.) [hereinafter Def.'s Answer] The defendant also claims that this court is barred from granting any of the plaintiff's requested relief "because the granting of such relief would constitute a violation of the Defendant's right of freedom of speech." *Id.* at ¶ 2.

## II. STANDARD OF REVIEW

The standard applied to a motion for partial summary judgment is identical to the standard applied to adjudicate a case fully by summary judgment. The motion shall be granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Calnetics Corp. v. Volkswagen of Am., Inc.,* 532 F.2d 674, 683 n. 11 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citing *First Nat. Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted).

## III. LEGAL DISCUSSION

Particular facts upon which I have relied heavily must be initially emphasized. First, the plaintiff possesses certificates of copyright and trademark registration for the property at issue. (Pl.'s Compl. at Ex. A–F.) The certificates alone constitute prima facie evidence of the validity of the registration, ownership of the property, and the exclusive right to its use. *Remick Music Corp. v. Interstate Hotel Co. of Neb.,* 58 F.Supp. 523, 531 (D.Neb.1944), *aff'd,* 157 F.2d 744 (8th Cir.1946), *cert. denied,* 329 U.S. 809, 67 S.Ct. 622, 91 L.Ed. 691 (1947); 17 U.S.C. § 410(c) (1988); *Curtis–Stephens–Embry Co. v. Pro–Tek–Toe Skate Stop Co.,* 199 F.2d 407, 413 (8th Cir.1952); 15 U.S.C. §§ 1057, 1115(a) (1988). Therefore, the defendant, claiming that the copyright and trademarks are invalid, has the burden of overcoming this presumption. *Apple Computer, Inc. v. Formula Int'l Inc.,* 725 F.2d 521, 523 (9th Cir.1984); *Sylvania Elec. Prods., Inc. v. Dura Elec. Lamp Co.,* 247 F.2d 730, 732 (3d Cir.1957). Second, although the defendant argues that enforcing the copyright and trademark laws will violate her constitutional rights to free speech and religion, she does not in any way question the laws' constitutionality. Third, the defendant "does not dispute the proposition that religious organizations can hold valid trademarks; she does not dispute that religious organizations can hold valid copyrights, or that works on the subject of religion can be the subject of a valid copyright." (Def.'s Mem. in Opp'n to Pl.'s Mot. for Partial Summ.J. on First Amendment Defense at 1–2.) [hereinafter Def.'s Br.]

Upon reviewing the record before me, I glean two basic assertions by the defendant. One, the copyright to *The URANTIA Book* and each of the trademarks at issue are invalid; and two, if the court rules in favor of enforcing an invalid copyright or trademark, the court, not the plaintiff, will be violating her constitutional rights to freedom of religion and speech. The first contention has yet to be proven, and the second is premature and more properly an issue for any future appeal rather than an affirmative defense in the instant case.

### A. The First Amendment

██ The ultimate issue before me is whether the plaintiff's copyright and trademarks are valid. The defendant argues that the court should abstain from deciding the issue because the dispute over this matter is an ecclesiastical one. I am confident, however, that the issue can be decided through the interpretation of statutes, not scriptures.

> [T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded.... [T]he Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine.

*Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969) (citation omitted); *see Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). I am convinced that neutral principles of law are applicable to the instant case and may be relied upon to determine whether the plaintiff's copyright and trademarks are valid.

### 1. Freedom of Religion

### a. The Free Exercise Clause

The defendant's desire is to propagate the message of *The URANTIA Book,* and neither the Urantia Foundation nor this court can constitutionally prohibit that endeavor. The defendant, however, has chosen as one means of accomplishing this task the verbatim copying of the entire text of *The URANTIA Book* coupled with the free distribution of that copied text to all who are interested. In addition, the defendant has used the plaintiff's registered trademarks on various materials sent along with the distributed text. The defendant attempts to justify her means by pointing to the First Amendment's Free Exercise of Religion Clause.

The Free Exercise Clause absolutely prohibits any governmental attempt to regulate religious beliefs per se. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

> Government may neither compel affirmation of a repugnant belief; nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities; nor employ the taxing power to inhibit the dissemination of particular religious views.

*Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963) (citations omitted). The freedom to act, however, even when such action is based upon one's religious convictions, remains tethered to certain legislative restrictions. As the United States Supreme Court declared over fifty years ago:

> The religious liberty which the Constitution protects has never excluded legislation of general scope not directed against doctrinal loyalties of particular sects.... Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities.

*Minersville Sch. Dist. Bd. of Educ. v. Gobitis,* 310 U.S. 586, 594–95, 60 S.Ct. 1010, 1013, 84 L.Ed. 1375 (1940) (footnote omitted).

The copyright and trademark laws are such neutral laws of general applicability to which the defendant must adhere for the betterment of the public good, regardless of her religious convictions to the contrary. Nevertheless, she "admits copying the text of The Urantia Book ... and admits distributing [it] ... throughout the United States." (Def.'s Answer at 3, ¶ 13.) Furthermore, the defendant "admits to use of the concentric

circles mark and the name Urantia." *Id.* at ¶ 14. Therefore, assuming, as I must, that the plaintiff's copyright and trademarks are valid, I find that the Free Exercise Clause is not a proper defense to the defendant's actions.

### b. The Establishment Clause

■ The First Amendment commands that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The defendant does not contend that either the copyright or the trademark laws, as written, run afoul of this amendment. Therefore, if the defendant is unable to refute the plaintiff's presumptions of validity concerning the copyright and trademarks at issue, I am satisfied that this court may enforce the aforementioned laws without violating the Constitution. If the plaintiff is found to have a valid copyright or trademark, the enforcement of such cannot be said to be fostering the "establishment" of the Urantia Foundation as a religion. The recognition of copyright or trademark protection for the Urantia Foundation in common with all other entities that comply with statutory formalities "reflects nothing more than the governmental obligation of neutrality in the face of religious differences, and does not represent that involvement of religious with secular institutions which it is the object of the Establishment Clause to forestall." *Sherbert v. Verner,* 374 U.S. 398, 409, 83 S.Ct. 1790, 1797, 10 L.Ed.2d 965 (1963); *see Bridge Pub., Inc. v. Vien,* 827 F.Supp. 629 (S.D.Cal. 1993) (holding the enforcement of valid copyrights violates neither the establishment clause nor the free exercise clause); *United Christian Scientists v. First Church of Christ,* 829 F.2d 1152, 1159 (D.C.Cir.1987) ("Normally, a grant of copyright on a religious work poses no constitutional difficulty."); *Purcell v. Summers,* 145 F.2d 979 (4th Cir.1944) (holding freedom of religion no defense to the misleading and injurious use of trade name).

### 2. Freedom of Speech

### a. The General Rule

■ The defendant claims that enforcing the plaintiff's copyright and trademarks would violate her right to freedom of speech.

(Def.'s Br. at 2.) The plaintiff, however, is not attempting to prevent the defendant from "spreading the gospel of *The URANTIA Book.*" *Id.* at 5. Nor does the plaintiff seek to prohibit the defendant from uttering the word "Urantia," or enjoin the defendant from ever displaying the three blue concentric circles. The plaintiff merely requests that the court protect its property interests in what are presumed to be a valid copyright and trademarks.

The defendant does not dispute that copyrights and trademarks and the right to their exclusive use are property. Therefore, assuming, as I must, the validity of the plaintiff's copyright and trademarks, "[i]t would be an unwarranted infringement of property rights to require them to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist. Such an accommodation would diminish property rights without significantly enhancing the asserted right of free speech." *Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972). The alternative avenues of communication available to the defendant are numerous. There are, however, two avenues that must not be ventured down. The defendant may not copy and distribute the text of *The URANTIA Book,* if the copyright is valid, and the defendant may not use the plaintiff's trademarks in a manner that is confusing to the public and injurious to the Urantia Foundation, if the trademarks are valid. "The first amendment is not a license to trammel on legally recognized rights in intellectual property." *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1188 (5th Cir.1979).

### b. The Zapruder Exception

■ The defendant has gone to great length to convince the court that the instant case calls for the application of a pure First Amendment defense, similar to that which has been hypothesized by Professor Nimmer. *See* (Def.'s Br. at 11–13.); 1 MELVILLE B. NIMMER & DAVID NIMMER, *Nimmer on Copyright* § 1.10[C][2] (1994) [hereinafter NIMMER]. The defendant offers a list of cases in which other courts although "not faced with

circumstances sufficient to sustain [such] a First Amendment defense have noted the possibility of such a defense." (Def.'s Br. at 12.) I, too, find that such a defense is inapplicable to the facts before me.

Professor Nimmer advocates such a defense in the situation where an entity owns the copyright to a graphic expression of "news," but refuses to disseminate it. NIMMER, *supra*, at 1–89. First, *The URANTIA Book* is not a graphic expression like the film of the Kennedy assassination or the photographs of the My Lai massacre. Second, the contents of *The URANTIA Book* do not fit Professor Nimmer's definition of "news." According to Professor Nimmer, a graphic expression of "news" exists only if the event captured has been the subject of news stories throughout the nation. *Id.* at 1–91. Third, *The URANTIA Book* is not being withheld from the public. The plaintiff suggests there are a quarter million books in print, and assures the court that the book remains "available for sale to the public." (Pl.'s Reply Mem. in Supp. of its Mot. for Partial Summ.J. on First Amendment Defense at 2, 14.) "The fact that the words [with which] the author has chosen to clothe his narrative may of themselves be 'newsworthy' is not an independent justification for unauthorized copying." *Harper & Row, Pub., Inc. v. Nation Enters.*, 471 U.S. 539, 557, 105 S.Ct. 2218, 2229, 85 L.Ed.2d 588 (1985).

*B. Reconciliation of an Apparent Conflict*

Neither Congress nor the courts have been oblivious to the inevitable conflict between the First Amendment and copyright and trademark law. Under the idea-expression dichotomy "[c]opyright law incorporates First Amendment goals by ensuring that copyright protection extends only to the forms in which ideas and information are expressed and not to the ideas and information themselves." *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 795 (9th Cir.1992). Furthermore, First Amendment concerns are addressed through the "fair use" doctrine, which recognizes "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent." *Harper & Row*, 471

U.S. at 549, 105 S.Ct. at 2224 (quoting H. BALL, *Law of Copyright and Literary Property* 260 (1944)).

Trademark law accommodates the First Amendment in a way similar to copyright law. Analogous to the idea-expression dichotomy, a trademark cannot be obtained in generic words or symbols. A word or symbol is generic if it is not an expression that relates exclusively to the potential trademark owner's property. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992); *see Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938) (holding the term "shredded wheat" generic and unable to be a trademark). Furthermore, there are numerous statutory defenses in trademark law, including a "fair use" defense. *See* 15 U.S.C. § 1115(b). The defendant, however, has not chosen to assert any of the recognized defenses, and, instead, relies on a pure First Amendment defense.

I find that the aforementioned principles and defenses adequately serve to accommodate the competing interests of the First Amendment and the laws of copyright and trademark. I do not believe that expansion in this area would be judicially prudent. Consequently, the defendant's proffered First Amendment defense to the plaintiff's claims of copyright and trademark infringement must be rejected.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for partial summary judgment on the defendant's First Amendment defense, filing 179, is granted.